DORA BINGHAM, Respondent, *v.* JAMES M. THOMPSON *et als.*, Appellants.

A Deed absolute on its Face may be shown to be a Mortgage. A deed absolute on its face, if clearly shown to have been given as security for a loan, will be treated as a mortgage in equity, and a reconveyance decreed to the debtor upon payment of the debt.

Parol Evidence showing a Deed a Mortgage not Contradicting the Instrument. Parol evidence to show that a deed absolute on its face to have been given as security for a loan is not evidence contradicting the instrument, but evidence to create an equity superior to the deed.

Proof to show a Deed a Mortgage should be Clear. The proof necessary to show a deed absolute on its face to be a mortgage should be clear, satisfactory and convincing. A bare preponderance of evidence is not sufficient to defeat the natural effect of an instrument deliberately and freely executed. The presumption is that persons intend that which is the necessary and natural effect of an instrument voluntarily executed; and to overcome such presumption, the proof should be so cogent, weighty and convincing as to leave no doubt upon the mind.

Stipulation to waive Technical Errors. On an appeal to the Supreme Court under a notice that the appeal was from the order overruling a motion for a new trial, where counsel stipulated in effect to waive technical errors, and that the appeal should be heard and determined only on its substantial merits: *Held*, that the preliminary objections that the appellate court could not consider any questions touching the judgment and decree, and that the notice for new trial was never properly before the court below on account of not having been made or served in time, were fully covered and obviated by the stipulation.

Appeal from the District Court of the Third Judicial District, Washoe County.

This was an action brought against James M. Thompson, Elizabeth J. Thompson, his wife, and James W. Braden, to have a certain deed executed by plaintiff to defendant Braden on June 30th, 1868, of a tract of land in Washoe County, declared a mort-

gage, to have the amount of the alleged mortgage debt ascertained, and upon payment of such debt, to compel the defendants to reconvey the property to plaintiff. The land consisted of the south-west quarter of section thirty-four, in township sixteen north, in range nineteen east of Monte Diablo; and at the commencement of the suit the legal title thereof was in the defendant Elizabeth J. Thompson, to whom it had been conveyed by the defendant Braden on July 12th, 1866. The consideration expressed in the conveyance from plaintiff to Braden was three hundred dollars; and at the time of its execution the plaintiff received two hundred and forty dollars in cash and the promissory note of Braden and James M. Thompson for sixty dollars payable August 1st, 1866.

The answer of the defendant was very full, denying all the equities alleged in the complaint.

The Court below filed lengthy findings of fact and conclusions of law in favor of the plaintiff; and a judgment and decree was entered to the effect that upon the payment into Court, for the use of Elizabeth J. Thompson, of five hundred and thirty-one dollars and fifty cents, with interest from the date of the decree at the rate of five per cent. per month, with liberty to discharge sixty dollars of such sum by duly assigning the promissory note for sixty dollars executed by James W. Braden and James M. Thompson, which was still in plaintiff's hands, the defendant Thompson should reconvey the property, etc.

The notice of appeal stated that the appeal was from the order overruling the motion for a new trial.

A stipulation contained in the transcript provided as follows:

"It is hereby stipulated in above entitled action that the statement on appeal from order denying new trial and from the judgment thereon consists of: 1st, The pleadings (summons not to be inserted); 2d, Statement on motion for new trial, including exhibits; 3d, Judgment, findings and order denying new trial; 4th, Notice and undertaking on appeal."

The stipulation between counsel, referred to in the opinion, appears to have been filed with the transcript, and probably after the first point of respondent's brief was penned, and was as follows:

"It is hereby stipulated and agreed that the notice of motion for a new trial in the Court below of the above entitled cause was served in the time required by law upon the proper parties, and that said notice shall be considered by the Court as properly in the statement on appeal and in the transcript.

"It is further stipulated and agreed that the statement on motion for new trial in the above cause was settled upon notice as required by law by the presiding Judge who tried said cause below, and that the omission to sign a certificate of said settlement of the statement was by inadvertence of the Judge who settled the same; and the certificate of the Judge and the settlement of the statement shall, for all purposes of this appeal, be treated and considered as signed by said Judge and as having been settled according to law.

"It is further stipulated and agreed that the appellate Court may determine what errors, if any, in the above cause are reviewable, and make such order in the premises as shall be according to law.

"That no technical error shall be considered by the appellate Court, but only such questions as go to the substantial merits of the case, and that no reversal shall take place except on a substantial question that goes to the merits of the case on the appeal from the order overruling the motion for a new trial; said question either to be as to the improper admission or exclusion of testimony, or any other question of law or fact that affects the substantial rights of the parties."

*Ellis and Sawyer*, for Appellants.

I.

This being an action to reform a deed absolute on its face, and have the same decreed a mortgage, and being a proceeding in equity, the rule that an appellate Court will not disturb a judgment founded on a verdict where the testimony is conflicting does not apply, the cause having been tried by the Court without a jury; and this Court will judge, as well as the Court below, of the weight and effect to be given to the testimony in the case, the same being completely before this Court. (*Feusier* v. *Sneath*, 3 Nev. 131.)

## II.

For the plaintiff to succeed in this action, and in all cases where it is attempted to show that the object which induced the execution of the deed is wholly different from that which appears upon its face, the testimony must be *clear, precise* and *indubitable.* The law presumes that the deed expresses the real transaction between the parties. (1 Watts & Sergeant, *Stein* v. *Shack*, 201 and 202 ; 1 Watts & Sergeant, 201 ; see, also, *Feusier* v. *Sneath*, 3 Nev. 124.)

## III.

The deed herein sought to be declared a mortgage cannot be varied by decree in its legal effect, unless the evidence of a different interest between the parties thereto be of transactions or conversations which took place at the time of the execution of the instrument. Any conversations or negotiations between the parties made prior to this time, are wholly inadmissible to contradict the intent as expressed on the face of the deed. (*Stein* v. *Shack*, 1 Watts & Sergeant, 202 ; *Causius* v. *Stevenson*, 5 Serg. & Raule ; *Rearick's Executors* v. *Rearick*, 3 Harris Penn. State Reports, 72.)

## IV.

The cases which seem to sustain this proceeding on the part of the plaintiff, (in 13, 14 and 15 Cal. Rep.) only permit evidence to prove distinct and substantive facts ; as that the relation of debtor and creditor existed prior to the execution of the written instrument ; or that such relation was created at the time of the execution of such written instrument ; or that some credit was given at the time of the execution of such instrument, which would give the vendor an equity higher than the deed itself ; and do not go to the extent of admitting testimony or conversation had prior to its execution to modify vary or reform such instrument.

## V.

There is no pretense in this case, that in any transaction prior to the execution of the instrument the plaintiff was indebted to the defendants, or any of them ; and hence, to sustain the case of the

plaintiff, it must be shown by evidence contemporaneous with the execution and delivery of the deed, that the money received by plaintiff was advanced to her as a bonus, and that the debt still exists.

### · VI.

The Court erred, therefore, in admitting the testimony of the plaintiff herself, as to conversations which took place prior to June 30th, 1866, the day of this transaction between the plaintiff and defendant Thompson, and should have confined itself to the testimony as to the transaction itself on that day, and at or about the time of the execution of the instrument, and to such conversation at that time as would be explanatory of the intent of the parties, and of the substantive facts out of which such higher equity might arise, in spite of the written contract to the contrary.

The defendant in this case, to sustain the proposition that the deed was intended as an absolute conveyance and not as a mortgage, relies upon the deed itself; the solemn acknowledgment of the execution of the same on the part of the plaintiff for the uses and purposes therein mentioned; and upon the positive testimony of all the persons present at the execution of the same that nothing was said about its being a mortgage, or the money advanced as a loan; and the testimony of both Braden and Thompson that there was never any such understanding or agreement; upon the fact that the plaintiff herself is contradicted upon every material fact in the case upon which she testified, by one or more witnesses for the defense; that she characterized the transaction in her letter of July 22d, 1866, as a trade or absolute sale of the premises; that on a former occasion she gave a different account of the transaction under oath.

### VIII.

We claim that if two parties should contract under seal, and one of these parties should attempt to show fraud in securing his signature to the deed by his own testimony unsupported by *circumstances*, showing the relation of debtor and creditor to exist, and the other party to the deed should deny all fraud or imposition, no Court would be justified in setting aside such deed, whatever the standing of the parties to the same might be with reference to the question

of credibility. But we claim that the testimony on the part of the plaintiff is not sufficient under the rule to govern such cases, to warrant the setting aside of this deed even though the same were not contradicted by all the witnesses on the part of the defense, for the reason that the same is full of doubt, uncertainty, and is inconsistent with itself, whereas it should be clear, precise and indubitable.

## IX.

The subsequent alleged declarations of Thompson were inadmissible to explain the character of the transaction, unless they admitted the original transaction to be fraudulent, and made in the nature of a confession of the fraud, trick or artifice; but Thompson and Braden emphatically *deny* that a loan was ever mentioned at any time; that nothing was ever said between plaintiff and them, or either of them, about the *loan of money,* and that all the conversation was with reference to a sale of the land in testimony of *Braden* and *Thompson.*

## X and XI.

In these points counsel discussed at length the testimony, particularly that of plaintiff herself, and concluded with the following remarks:

Should the decision of the Court below be held the law in this case, title to property would indeed be precarious and worthless and uncertain; the profession would be sent adrift as to what was understood to be well settled rules of law, and no man could be safely advised as to the character of his title. " Commerce would degenerate into chicanery, and trade become but another name for trick."

*Wallace and Flack* and *P. H. Clayton,* for Respondent.

## I.

The judgment and decree of the Court below should be affirmed, for the reasons that:

1st. The appeal is not from the judgment or decree, and this Court cannot consider any question touching the same.

2d. There was never any motion for a new trial or rehearing properly before the Court, and there can be no error in overruling the same.

## II.

The appellants object that there was no tender by the respondent of the amount of money due before the bringing of this suit. Respondent insists that no tender was necessary; that there was no necessity for an averment of tender in the complaint, or proof on the trial; and more especially in a case like this, where our vendee or mortgagee had conveyed the estate, and denied respondent's right to redeem. Besides, respondent could not tell before the trial who to tender the money to. (See *Daubenspeck* v. *Platt et al.*, 22 Cal. 330, and cases there cited.)

## III.

That parol evidence is admissible to prove that a *deed absolute on its face* was intended as a mortgage is so well established that no one at this late day can be found to deny it. (See *Pearce* v. *Robinson*, 13 Cal. 116; 8 Cal. 424.)

The principle that parol evidence is admissible to alter or vary a written instrument has no application to this class of cases. It is to bring the facts before the Court, to raise an equity superior to the deed. (See 3d Leading Cases in Equity, and note on page 625.)

## IV.

The question usually of inquiry for the Court in all this class of cases, where the right to redeem is denied, is whether after the execution of the deed there is still a subsisting debt, or whether by the transaction the debt was extinguished. (See *Hicks* v. *Lowe*, 10 Cal. 197; *Page* v. *Foster*, 7 New Hampshire, 392; *Skinner* v. *Miller*, 5 Little, 392; *Secrest* v. *Turner*, 2d J. J. Marshall, 471; 3 Dana, 252.)

## V.

The record in this case shows that the property in dispute was conveyed to the defendant Elizabeth J. Thompson, who is and was the wife of the defendant James M. Thompson. The title must be regarded as charged with all the equities in favor of the plaintiff that ever existed as against Braden or J. M. Thompson, for the reasons:

1st. There is no proof showing or tending to show that Elizabeth J. Thompson paid anything for the same.

2d. The proof does show, and the Court found the fact to be, that she had notice of the equities in favor of plaintiff; and

3d. She being a married woman, the presumption is that it was bought with the community funds. (See *Pixley* v. *Huggins*, 15 Cal. 131; *Myers* v. *Kinzer*, 12 Cal. 247; *Smith* v. *Smith*, 12 Cal. 217.)

## VI.

This is an action to compel and enforce the right of redemption, based upon an equity superior to and in spite of the terms of the deed. The rules applicable to, and growing out of, bills or actions to reform written instruments, have no application to this class of actions. Those actions to redeem are exceptions to the ordinary rule. (See *Feusier* v. *Sneath*, 3 Nev. 131; 13 Cal. 116; *Good* v. *Smith*, 13 R. 81; *Duff* v. *Fisher*, 13 R. 372; *Koppikus* v. *State Cap. Com.*, 16 Cal. 249.)

## VII.

The appellants'· counsel seem to think they have found in the word *indubitable,* used by the Court in the case cited of *Stein* v. *Shack,* the great desideratum for the decision of this case. The word, as defined by Webster, means not to be doubted, unquestionable, evident, apparently certain, too plain to admit of doubt; and if we are to presume that the Court, in delivering its opinion, used this word in the strongest sense of which it is susceptible, the doctrine there announced would evidently be contrary to the plainest principles of law for the ascertaining of truth in Courts of Justice. Greenleaf says (Green. on Ev., Sec. 1) that "none but mathematical truth is susceptible of that high degree of evidence called demonstrative, which excludes all possibility of error" (and of course all doubt) in the ordinary affairs of life. We do not require demonstrative evidence (that is, evidence that establishes the fact beyond doubt) because it is not consistent with the nature of the subject; and to insist upon it would be unreasonable and absurd. The most that can be affirmed of such things is, that there is no reasonable doubt concerning them. The true question, therefore,

in trial of fact is, not whether it is possible that the testimony may be false, but whether there is sufficient probability of its truth—that is, whether the facts are shown by competent and satisfactory evidence, and not as counsel would seem to insist, that the facts should be proved beyond any doubt.

*A. C. Ellis*, for Appellants, in reply, after setting out the stipulation of counsel and other matter, said:

The third and only real point in the brief of counsel is to maintain the precisely opposite of that which we claim. They claim that in cases of this character, if there is *doubt* as to whether the parties meant what they said, and what the solemn, written deed and acknowledged instrument clearly meant, then the Courts lean *to the right of redemption*, while we maintain precisely the opposite, and assert the doctrine of the Pennsylvania cases, and of *Feusier* v. *Sneath*, in our Court, that if there is *doubt* as to whether the deed was absolute *eo instanti*, Courts universally hold that the instrument must stand, and that any other doctrine is unsafe, unsustained, untenable, and will overthrow all the safeguards of title and send us all adrift, and leave us uncertain as to whether we have any reliable title to lands or not—leaves all to the memory of men, and nothing to solemn, deliberate, written agreement.

By the Court, LEWIS, J.

The doctrine that an absolute deed, when given as security for a loan of money, will be treated as a mortgage in equity, and a reconveyance decreed to the debtor upon payment of the debt, is now very well established by the authorities. This doctrine of the equity Courts, it is said, is not opposed to the rule of law that parol evidence is inadmissible to contradict or vary a written instrument; for when a deed absolute is decreed to be a mortgage it is done not upon evidence contradicting the written instrument, but upon proof of such facts and circumstances as will create an equity superior to the deed itself. Thus, if it be shown that the grantor was induced by a promise of reconveyance to execute an absolute deed as security for a loan, the proof of that fact would not necessarily contradict the letter of the deed, but it would establish an

equity of redemption in favor of the grantor; and so a deed absolute on its face would be controlled in its operation not by evidence contradicting its terms, but by means of an equity superior to the instrument.     (*Note to Thornburgh* v. *Baker*, Leading Cases in Equity, 873.)

But in all cases of this kind when the defendant by his answer denies the facts by which it is sought to control the operation of an absolute deed, the proof on behalf of the plaintiff must be clear, satisfactory and convincing. A bare preponderance of evidence ought not to be sufficient to defeat the natural effect of an instrument deliberately and freely executed. There is at least a strong presumption that persons intend that which is the necessary or natural effect of any instrument voluntarily executed by them. When an absolute deed is given by a person of sound mind, it is to be presumed that the grantor intended to make an indefeasible conveyance. If, therefore, one who has executed such instrument seeks to give it an effect different from that which would naturally result from its terms, it is but just that he should be required to produce convincing proof of the facts and circumstances which are to produce that result.

The Courts, too, have always been very reluctant to interfere with or set aside the legal title to real property; and indeed it is safe to say they never do so except when the evidence upon which they act is perfectly satisfactory, after giving to the muniments of such title due weight and consideration. In cases of this kind, therefore, the right to redeem is decreed only upon proof which leaves no doubt upon the mind as to the justice of such decree. In the case of *Franklin* v. *Roberts*, (2 Iredell, Eq. R. 560) this language is used by the Court: "When the answer denies the right of redemption, the proofs must be clear, consistent and cogent, composed of circumstances incompatible with the idea of an absolute purchase, and leaving no doubt on the mind. So in the note to *Thornburgh* v. *Baker*, *supra*, it is said: "The evils which this course of decision might otherwise produce are diminished or obviated by the well-settled rule of equity, which requires those who seek to control a written instrument to make out their case by clear and convincing proofs, and will refuse to make a decree in opposi-

16

tion to the denials or allegations of the answer in response to the bill, unless they are overborne by the testimony of more than one witness, or manifestly at variance with the facts and circumstances disclosed by the pleadings and evidence." "When," says Starkie, "a party at the time of executing a deed pointed out a mistake which the other agreed to rectify but afterwards refused to do so, parol evidence of the fact was held to be admissible on the ground of fraud. Such evidence ought not, for obvious reasons, to be allowed to prevail unless it amount to the *strongest possible proof*." (3 Starkie on Evidence, 1019. See also *Stein v. Shack,* 1 Watts and Sergeant, 201.)

Assuming this to be the rule, it only remains to determine whether the evidence on behalf of the plaintiff in this case is so cogent and convincing as to leave no doubt on the mind that she is entitled to a decree.

In our judgment the testimony is not only not sufficient to warrant a decree in favor of the plaintiff, but is overwhelmingly in favor of the defendants. Before referring specially to the evidence it may be well to state that the suit is brought for the purpose of obtaining a decree adjudging a certain absolute deed, executed by the plaintiff to the defendant Braden in the month of June, 1866, to be a mortgage, and giving to the plaintiff the right to redeem the premises so conveyed. As a foundation for this relief it is claimed that the money advanced as a consideration for the execution of the deed was simply a loan, to be repaid at the end of three months; and that Braden agreed at the time of the conveyance to reconvey the premises upon the payment to him of the money, with interest, and that the plaintiff was induced to make an absolute deed by the representations of Thompson, who it is claimed pretended to act as the friend of the plaintiff in the transaction, and persuaded her that Braden, being an honest and honorable man, would reconvey, in accordance with their mutual understanding; that Braden was Thompson's friend, but entirely unknown to the plaintiff until the time of the execution of the deed. It is also claimed that the money loaned was, in fact, furnished by Thompson—that he was the real party in interest, and that the deed was obtained solely for his benefit. The land in question having been

conveyed to Elizabeth J. Thompson, (the wife of the defendant, J. M. Thompson) very soon after the conveyance by the plaintiff to Braden, she is now the holder of the legal title—charged, however, according to the plaintiff's testimony, with notice of the nature of the conveyance to Braden, and the circumstances under which it was made.

It may be conceded that these facts, if supported by sufficient proof, would entitle the plaintiff to the decree sought by her; but as we have already stated, the great weight of evidence, even without considering the deed, is upon the side of the defendants. It must be admitted that the plaintiff testifies fully, positively and minutely to all the facts necessary to support her case, and her evidence is, in some measure, corroborated by her sister, who testified in this manner with respect to the agreement to reconvey: "I was present at the time of the execution of the deed of the land in dispute, by plaintiff to the defendant Braden. Besides plaintiff, defendant Braden and myself, I do not remember of any one else being present except Mr. Denson, who took the acknowledgment of the deed, and the defendant J. M. Thompson. I do not remember that anything was said or done between plaintiff and Thompson or Braden at the moment of the signing of the deed. I do not know of any agreement between the parties relative to the subject matter of this suit, entered into at the time of the execution and delivery of the deed. Nor do I know of any agreement between them other than that which I will presently mention."

"For some time prior to the time of the execution of the deed the defendant J. M. Thompson was in the habit of visiting the plaintiff and myself at her house. He professed great friendship for us, and expressed a deep interest in our success and welfare. He very often mentioned the Excelsior Mines, and spoke in high terms of the business advantages of the place; read letters to us purporting to have been written there; told us he was going there, and urged us to go also and commence business, and proposed to aid us when there. We were disposed to act on his advice, but had not the means to justify going. We so informed him, and he proposed to assist us in that respect also. Thompson told the plaintiff that he had not as much money to spare as she wanted,

which was three hundred dollars, but that there was a man who had been chopping wood for him who could raise some money, and he could get him to furnish her some. He thought the man could raise then about two hundred dollars—that he himself would advance forty dollars, and the remaining sixty dollars could be sent through the express, and that they would give a note for that sum. Thompson said he had lost some money, I don't remember how much, and that it had made him very cautious about his money, and that he would have to have very good security. That he could get the man to take the land in question, deeded as security, but that he would not take a mortgage. That the plaintiff would have to give him a deed, and when she paid the money and interest, she would have the deed back. I think Thompson gave the name of Braden for the man he spoke of. The plaintiff said she was willing to give five per cent. per month for the money. I told plaintiff that Mr. Thompson was our friend, and persuaded her to give the deed. Thompson said that he would see that a deed would be executed by Braden to her when she paid the money and interest, and would stand security for it. Plaintiff agreed to Thompson's proposition, and he was to bring the man Braden the next day. The next day Thompson came to plaintiff's house, and a man came with him whom he introduced as Mr. Braden, and said he was the man he had spoken of who was to loan the money. Plaintiff was at the time ill, and confined to her room. Thompson then mentioned the subject of the loan and deed. I don't remember the exact language he used. The plaintiff then asked Braden if he would let her have the money, and said she supposed Mr. Thompson had told him all about the arrangement. He said Thompson had told him, and that it was all right. Something was said to which I paid no attention. I then went out into town, and when I returned I found Mr. Denson there, and the deed was executed. About the time of my return, or within a few minutes after, Mr. Denson left, and Thompson and Braden remained. Braden said to Mrs. Bingham: 'As soon as you return you can have your land back.'

"I know that the plaintiff was offered six hundred dollars by Mr. Ellis, an attorney of Carson City, on the day she gave the deed to Braden and before it was executed."

This is all the material portion· of the testimony of the plaintiff's sister, and it substantially harmonizes with that portion of the plaintiff's testimony bearing upon this particular subject.

There is other evidence tending to show that Thompson was the person really interested in the deed, and that he furnished the· money advanced to the plaintiff by Braden. That evidence, however, in no wise tends to prove that there was any agreement by Braden or Thompson to reconvey the premises to the plaintiff, or that the money furnished was a loan. · It simply tends to prove that Thompson was the party interested in obtaining the deed and that for some reason, which is not explained, he did not wish it to be known. Such conduct on the part of Thompson no more tends to prove an agreement on his part or that of Braden to reconvey to the plaintiff, than it does to establish an agreement by the defendants to pay to the plaintiff a sum of money. The ground upon which the decree is sought is the agreement by Braden and Thompson to reconvey. If that fact be established by clear and convincing proof it is conceded the plaintiff should recover, but every ambiguous movement in the conduct of the defendant Thompson does not necessarily tend to establish that fact. We are unable to see how the concealment of his interest in the transaction between the plaintiff and Braden can be treated as proof of an agreement by Braden to reconvey. Evidence that Thompson was the real party in interest was of course admissible for the purpose of charging the legal title held by Mrs. Thompson with the equity of redemption, but it certainly does not in the remotest manner tend to establish the important fact that the absolute deed was intended as a mortgage.

The evidence with respect to the real value of the land at the time of the conveyance favors the proposition that the deed was not intended as an absolute conveyance, but it also very clearly appears that the real value could not be realized by the plaintiff at the time she executed the conveyance and needed the money. This evidence, together with the testimony of the plaintiff and her sister, is all that was introduced in support of the assumption that the deed was intended as a mortgage; that the money was advanced as a loan, or that there was an agreement by Thompson or Braden to reconvey.

On the other hand the deed is presented, which is regularly acknowledged by the plaintiff, and is in terms an absolute conveyance. This instrument itself, to say the least, counterbalances the plaintiff's testimony.

The defendant J. M. Thompson then testifies postively that no agreement was ever entered into, and that no conversation ever took place between the plaintiff and himself with respect to reconveying the land in question, and that he heard no such conversation, nor knew of any such agreement between plaintiff and Braden. Braden also testifies that no such understanding ever existed between himself and the plaintiff, and that not a word was said prior to or at the time of the execution of the deed, about a reconveyance of the land, or the money advanced by him being a loan. He says that when he handed the " money to the plaintiff she remarked that it was a very small sum of money to get for a place that had cost her so much." These witnesses, in their testimony, very minutely detail all the circumstances connected with the execution of the deed and the conversation which took place at the time, and flatly contradict the evidence of the plaintiff and her sister with respect to a reconveyance. Denson, the officer who took the acknowledgment and who is referred to by the plaintiff's sister, in referring to the time of the acknowledgment, testified in this manner : " We were all near enough together for me to hear any conversation in an ordinary tone of voice. I heard nothing said on that occasion about the money being a loan or the deed being a mortgage or security, or Braden deeding back. I went to the house and into the room with Thompson and Braden, and we all came away together. We all walked out in company from Mrs. Bingham's room and from the house."

This witness also clearly contradicts the testimony of the plaintiff's sister with respect to the conversation between Braden and the plaintiff at the time of the acknowledgment. He says : " I heard the deposition of Mrs. Walker read at the trial of the other action about this matter. *Nothing* was said at this interview by Braden to any person about wishing to treat Mrs. Bingham better than any one else on account of her being a widow, or about Braden's widowed mother."

The witness Edwards, on behalf of the defendants, testified in this way:

" I saw the plaintiff and her sister at the International Hotel, in Virginia City, on the evening of July 5th, 1866, and had a conversation with Mrs. Bingham about this sale. I went there to talk with her about the land, at the request of Mr. Ellis. I did not then know that she had deeded it. I stated to her that Mr. Ellis wished to purchase it. I had a long conversation with her about the matter. Her reply to me was, that he was too late; that she had already sold the land. I think she said she had sold it to Thompson, but I am not certain about that. She stated distinctly to me that the price she got for it was too small. She was sorry that Ellis had not made the arrangement to buy it before. She said she had sold the land and got too little for it, but Ellis was too late."

The witness Mrs. Rose testified that in September, 1866, whilst stopping at the defendant Thompson's house, the plaintiff came there and inquired for Braden. He not being in, she stated to witness that " she wanted to see him ; that she had heard he wanted to sell the land conveyed by her to him, and she wanted to see if she could buy it. She said she wanted to see him the first time he came to Carson, for she wanted the first chance to purchase it."

Mr. Ellis, who is referred to by plaintiff's sister as having offered to purchase the land, testified: " I know the parties to this action. I drew the deed from plaintiff to Braden. I saw Mrs Bingham at her house on the day I drew the deed ; she talked about this land, and seemed to have no other business with me. She said she was about to sell the land to Braden for three hundred dollars. I told her I was advised of it ; that I had drawn the deed. I asked her if she intended to take that sum for it ; she said yes, unless she could get more. She asked me if it was worth more. I told her I thought it worth twice that, but that she knew her own necessities better than I ; and I was unadvised whether it would bring more in the market. She then wanted me to buy it. Offered it to me for five hundred dollars—two hundred and fifty down, and the balance in ninety days. I declined to do it, for two reasons :—first, I did not have the money ; and secondly, Mr. Braden was already nego-

Bingham *v.* Thompson.

tiating for it.  I made her no offer for the land..  I discouraged her selling the land.  She told me she would do no more about the land until Monday.  I first ascertained that she had sold on the Friday of the next week."

In a letter written by the plaintiff to Ellis, dated July 22d, 1866, and introduced in evidence, this passage occurs: "I met Mr. Edwards in Virginia.  He said you were offered more for the ranch by another person.  Is it true?  If so, what amount was offered?  *I have regretted the trade more than once, and my private opinion is, I have been very much swindled.*"  If, with all this testimony to support it, the deed in this case can be decreed a mortgage, and the transaction between Braden and the plaintiff held not to be an absolute sale, then indeed does the title to real estate in this State stand upon the most precarious and insecure foundation.  It would be as well to do away with all written instruments in the conveyance of land, and let the title to real property rest exclusively upon fickle recollection, vague surmises and hearsay evidence.

That consideration and weight which the Courts so universally give to solemnly executed instruments conveying the title to real property should not be overcome by an appeal *ad misericordiam*, or the bare cry of fraud.  Proof so cogent, weighty and convincing as to leave no doubt upon the mind, ought alone to overcome them.

We know of no process of reasoning by which it can be maintained that the evidence on behalf of the plaintiff in this case meets this stringent requirement of the Courts in cases of this kind.  It is very evident the Judge below did not give to the deed that weight as evidence which should have been given to it.

We have not considered the preliminary points made by the attorneys for respondent in this Court, because they are fully covered, and the objections obviated, by the stipulation entered into by the respective counsel.

As the findings of fact are not warranted by the evidence, they are set aside, as also the decree ; and the Court below is directed to dismiss the bill.

BEATTY, C. J., did not participate in the foregoing decision.