[No. 915.]

## Z. PIERCE ET AL., APPELLANTS, *v.* P. L. TRAVER ET AL., RESPONDENTS.

DEED—WHEN DECLARED A MORTGAGE VALUE OF PROPERTY.—The mere fact that property was conveyed for less than its real value is not, of itself, sufficient to authorize the court to declare a deed absolute upon its face to be a mortgage.

IDEM—TESTIMONY MUST BE CLEAR.—The proof necessary to show a deed absolute, upon its face, to be a mortgage, must be clear, convincing and satisfactory. Testimony reviewed and held insufficient to sustain the judgment.

APPEAL from the District Court of the Eighth Judicial District, Esmeralda County.

The facts sufficiently appear in the opinion.

*M. A. Murphy* and *Wells & Stewart,* for Appellants.

I. The court below erred in permitting defendant to attempt to prove fraud by witness Pierce, as it was not alleged

in the answer. (*Maynard* v. *F. F. Ins. Co.*, 34 Cal. 48, and cases cited.)

II. The court erred in permitting defendants to amend their answer, after the trial, argument and submission of the case. (*Gillam* v. *Sigman*, 29 Cal. 637; *McMinn* v. *O'Connor*, 27 Id. 238; *Stringer* v. *Davis*, 30 Id. 318.) The evidence is insufficient to justify the findings and judgment of the court, and they are against law. (8 Cal. 574; 10 Id. 446; 1 Id. 133; 13 Id. 60; 7 Id. 150; 27 Id. 232; 12 Id. 27; 14 Id. 167; 9 Id. 177; 15 Id. 504; 32 Id. 102; 18 Id. 394.)

*T. W. W. Davies*, for Respondents.

By the Court, HAWLEY, C. J.:

The important question in this case is whether or not the testimony is sufficient to sustain the judgment appealed from. On the eleventh day of December, 1876, John A. McDonald executed and delivered to the plaintiffs a deed conveying the real estate, the title to which is sought to be quieted by this action.

The answer of defendants alleges that although the deed was in form absolute yet the fact is that it was, when made and recorded, intended by the parties to be a mortgage to secure the payment of one hundred and fifty-five dollars and five cents. In an amendment to the answer, made after the admission of certain testimony, it is alleged "that said conveyance was made by said McDonald with the intent to hinder, delay and defraud his creditors, P. L. Traver and Sanderson & Horn, and that said conveyance was accepted by * * Pierce & Vernon with full knowledge of the intent of said McDonald."

The court, before which the cause was tried without a jury, found that the deed was intended as a mortgage to secure the sum of one hundred and fifty-five dollars and five cents, and rendered a judgment declaring "that the legal title to the premises" is in John McDonald; that the sale to plaintiffs was a mortgage, and that defendant Traver should be " permitted to sell the premises " to satisfy his judgment against McDonald, " subject to the lien of the mortgage " in favor of plaintiffs.

It is evident from the findings and judgment that the court did not consider the evidence sufficient to establish the fact of fraud as alleged in the amendment to the answer. If the sale of the property by McDonald to Pierce and Vernon was made with intent to hinder, delay and defraud the creditors of McDonald, and Pierce and Vernon had knowledge of that fact, then the sale was absolutely null and void, and the deed could not, for such reasons, be declared a mortgage.

The court found that McDonald executed the deed upon consideration "that the plaintiffs in this action should cancel all the indebtedness standing on their books against him, which amounted to twenty-eight dollars and fifty cents," and for the further consideration "that plaintiffs should assume to pay to Messrs. Sanderson & Horn the sum of one hundred and twenty-seven dollars." This finding is fully sustained by the evidence. There is no evidence to the contrary.

The plaintiff Pierce, in testifying in regard to the transaction, on cross-examination, said: "McDonald came into our store on the eleventh of December, 1876, and wanted to borrow money; I told him I had no money to loan; he said he owed Sanderson & Horn of San Francisco, and he wanted to raise money to pay them, and if I would let him have the money he would give me a mortgage on his house and lot; I told him I did not want any mortgage, as we had no money to loan; I knew that McDonald was not doing any business and he could not pay me; I told him he could borrow the money from some one else; he went out and was gone for some time; when he returned he said he could not borrow the money; he then told me he would sell me his house; we agreed upon the price, which was, that I was to pay Sanderson & Horn's bill—one hundred and twenty-seven dollars—and square him on our books, which we agreed to do; I have paid Sanderson & Horn their money; * * * at the time McDonald sold me the property he first wanted to borrow the money and give me a mortgage on the property; I told him I would not have anything to do with the property without it would be a *bona*

*fide* sale, and if he wanted to buy the property back he would have to depend entirely upon me for that." This testimony is uncontradicted. The testimony offered by defendants corroborates it in every particular. McDonald, who was sworn and examined as a witness on behalf of the defendants, details the facts substantially as related by the plaintiff Pierce. He said that prior to the execution of the deed he "tried to borrow the money from other parties, but could not get it." In his cross-examination he said: "When I spoke to Pierce about selling my property to him, I asked him how it would be in case I should want to buy this property back. He said: 'If you want to buy this property back you must depend upon me for that, or leave that to me.'" In the course of his testimony he says: "I never had any understanding with Pierce & Vernon about re-deeding the property back to me. There was no such agreement."

After the deed was executed and delivered the plaintiffs gave McDonald a written lease of the premises for forty dollars per month. McDonald, however, never paid but eighteen dollars. After the sale the defendant Traver and McDonald agreed upon a settlement. Traver in his testimony says: "I was to pay Pierce & Vernon two hundred and forty-five dollars and seven cents in money, give McDonald up his note and cancel our book accounts against him, which amounted to thirty-five or thirty-seven dollars, if Pierce and Vernon would deed the property to me; I went and saw Pierce and he told me he would deed the property to me if I would pay him two hundred and forty-five dollars and seven cents."

There is a conflict of evidence as to the terms of this agreement, whether Traver was also to purchase McDonald's personal property. Pierce testifies that he agreed to sell the premises for two hundred and forty-five dollars and seven cents, the amount of their bill against the property, if Traver would purchase the personal property of McDonald and give up McDonald's note. In explanation of this Pierce says: "I told McDonald I would deed the property to Traver, or anybody else that would buy his per-

sonal property and pay us our bill of two hundred and forty-five dollars and seven cents; I was doing this to help McDonald sell his personal property—trying to befriend him."

The proposed agreement was never executed. Pierce & Vernon subsequently bought the personal property of McDonald and took possession of the premises in contro-versy. Pierce & Vernon cannot be bound by the declara-tions of McDonald to Traver, to the effect that he only sold the property to Pierce & Vernon to prevent his San Fran-cisco creditors from forcing him, and that he intended to redeem it, said declarations having been made after the sale of the premises. There is testimony tending to show that the price paid by Pierce & Vernon was not a good consider-ation for the real estate. There is a conflict as to the value of the property. The testimony, however, clearly shows that it was sold for less than its true value.

The mere fact that the property was conveyed for a less sum than its real value is not of itself sufficient to authorize the court to declare a deed absolute upon its face to be a mortgage. A man in embarrassed circumstances may often be compelled, by the laudable desire to pay his debts, to dispose of his property, honestly, for much less than its true value.

The testimony in this case, without conflict, shows that McDonald was unable to procure a loan for the amount necessary to pay the debt due to Sanderson & Horn by giv-ing a mortgage upon the premises as security. McDonald testifies that prior to the sale to Pierce & Vernon he tried to sell the premises to Traver, but could not induce him to buy the same. The remarks made by the court in *Bingham* v. *Thompson* apply, with equal force, to the facts of this case: "The evidence with respect to the real value of the land at the time of the conveyance favors the proposition that the deed was not intended as an absolute conveyance, but it also very clearly appears that the real value could not be realized by the plaintiff at the time she executed the con-veyance and needed the money." (4 Nev. 237.) There are some other facts of minor importance tending, in some

slight degree, to show that the sale was not, as the deed purports, absolute.

After giving due weight to all the testimony contained in the record, we have arrived at the conclusion that it is insufficient to sustain the judgment of the court.   It is a well-settled principle that the proof necessary to show a deed, absolute upon its face, to be a mortgage, must be clear, convincing and satisfactory.   We agree with the opinion of the court in *Bingham* v. *Thompson,* that the " consideration and weight which the courts so universally give to solemnly executed instruments conveying the title to real property, should not be overcome by an appeal *ad misericordiam,* or the bare cry of fraud.   Proof so cogent, weighty and convincing as to leave no doubt upon the mind ought alone to overcome them."   (4 Nev. 240.)

The judgment of the district court is reversed and the cause remanded for a new trial.