# HANNIG *v.* CONGER Et Al.

No. 2996

March 6, 1933.                                    19 P. (2d) 769.

*Ham & Taylor*, for Appellant:

*Chas. Lee Horsey*, for Respondents:

## OPINION

By the Court, SANDERS, C. J.:

This was an action to have a certain deed of record in Clark County, Nevada, declared a mortgage, to have the amount of the alleged mortgage debt ascertained, and, upon payment of such debt, to compel the defendant to reconvey the property to plaintiff, and to surrender its possession. Judgment went for the defendant. Plaintiff appeals.

The testimony in the case, without conflict, shows that on and for many years prior to January 16, 1930, the plaintiff, Reinhold Hannig, was owner in fee of a lot or parcel of land situate at St. Thomas in Clark County, consisting of 2½ acres, more or less, together with all and singular the appurtenances thereunto belonging. On that date the plaintiff borrowed from the defendant Jessie F. Conger, née Harrison, the sum of $500, evidenced by his note payable in one year with interest, payable monthly from the rentals of said land and premises. On that date plaintiff and his wife, Henrietta, executed to the defendant as security for the payment of said loan, and for no other purpose, a deed conveying said land in fee for the stated consideration of $500. On that date, as provided in the note, the deed so executed was delivered in escrow to one S. A. Waymire, to be returned to plaintiff on the payment of his loan with interest. The loan was not paid at maturity. In September, 1931, the defendant intermarried with one Dave Conger, who became active with her respecting her overdue note and mortgage. In October, 1931, at the request of the grantee, the escrow holder, S. A. Waymire, filed the deed for record in Clark County. Upon its recordation the instrument was returned to S. A. Waymire. On

November 4, 1931, the parties agreed in writing as follows:

"This agreement entered into this day by and between Mrs. Jessie F. Conger, formerly Mrs. Jessie F. Harrison, the party of the 1st part, and R. Hannig, the party of the 2nd part, whereby the 1st party agrees to loan the said 2nd party the sum of $600.00, a receipt of which is hereby acknowledged — to be secured by a promissory note of this date and payable on or before January 1st, 1932—without interest until due, said note to be secured with a deed of his lot in St. Thomas to be placed in escrow with S. A. Waymire of Overton, Nev.

"If said 2nd party fails to pay said note on January 1st, 1932, then the escrow deed is to be released to said 1st party, on receipt from her of a 1st mortgage to the said 2nd party to secure him on balance of his equity in said property, it is agreed that upon the sale of said property the said 1st party shall get $600.00 and forty percent of any money that the place may bring over and above the $600.00 as liquidated damages."

Afterward, to wit, on November 13, 1931, the parties met by appointment at the office of S. A. Waymire, who then and there, upon and at the request of Reinhold Hannig, delivered the deed to Jessie F. Conger. Afterward, on December 29, 1931, the plaintiff offered to pay to the defendant, when ascertained, the amount due and owing upon his note, with interest, and requested that she surrender up possession of the property taken under the deed, which offer and request she refused and claimed ownership of the property as against the plaintiff.

On the day following, to wit, December 30, 1931, Reinhold Hannig filed a bill of complaint in the court below against Jessie F. Conger and made her husband, Dave Conger, a party defendant. In his pleading and upon the trial the defendant Dave Conger disclaimed having any interest in or claim to the property in suit. This being so, he will hereinafter be eliminated as a party in interest.

The complaint alleges plaintiff's ownership of said

land and premises, the execution of said deed of January 16, 1930, as security for the payment of his loan of $500, and for no other purpose, and alleges that the defendant took possession of the property under the deed in the month of December, 1931. The complaint states the amount alleged to have been paid on his note and interest, and alleges that on December 29, 1931, he offered to pay the residue and demanded surrender of the possession of the property, which offer and demand were refused; wherefore he prayed judgment for the reconveyance of the property and the surrender of the possession thereof upon the payment of the amount to be found due on account of said loan and interest. There is nothing in the complaint to show how or under what circumstances the deed intended as a mortgage was delivered.

The defendant answered, and for answer admitted that the deed referred to in the complaint was executed as security for the payment of plaintiff's loan of $500 and for no other purpose. The defense consists of an alleged oral agreement entered into by the parties on November 13, 1931, in virtue of which it is alleged that the plaintiff, for a valuable and adequate consideration, released unto the defendant his equity of redemption in the mortgage, and agreed that the deed intended as a mortgage should be converted into, and deemed to be, an absolute conveyance.

The plaintiff demurred to the answer, which demurrer was overruled. Whereupon the plaintiff replied, denying all the affirmative allegations contained therein, and reiterated his prayer for judgment. Upon the trial findings of fact and conclusions of law were filed in favor of the defendant, upon which it was ordered, adjudged, and decreed that the plaintiff take nothing in virtue of his action. The plaintiff's motion for new trial was denied. So the case is here upon appeal from the judgment and from said order.

It is an established doctrine that a court of equity will treat a deed absolute in form as a mortgage

when it is executed as security for a loan of money. Yori v. Phenix, 38 Nev. 277, 149 P. 180, and cases cited. In this jurisdiction the principle is well established that a mortgage on real property is not an alienation, but a mere security for a debt. Southern Pac. Co. v. Miller, 39 Nev. 169, 154 P. 929, and cases cited. In the case at bar the court below deduced from its findings of fact as a conclusion of law that, where a mortgage is made by a deed absolute upon its face, the mortgagee may show that the equity of redemption was subsequently released to him by a parol agreement of the grantor; that in such case the deed, which is absolute in form, is left to carry the estate in fee, as it purports to do. In jurisdictions where a mortgage passes title to the mortgagee such is the law, but in jurisdictions such as Nevada, where a mortgage does not pass title to the mortgagee, the doctrine is well established that any mere oral subsequent statement, understanding, or agreement between the parties is ineffective to alter the original nature of the mortgage and prevent the equity of redemption. Massari v. Girardi, 119 Miss. 607, 197 N. Y. S. 751. 41 C. J. 772, and cases cited in the note. The court's conclusion of law was manifestly error, but under the facts and circumstances as disclosed by this record the error was not such as to warrant or necessitate the reversal of the judgment appealed from.

■ The important question in the case is whether or not the testimony is sufficient to sustain the judgment. The controversy hinges upon the intention of the parties at the time the deed was delivered. Since the pleadings admit, and the proof shows, that the deed was a mortgage, and that on the date of its execution it was delivered in escrow to be returned to the plaintiff on the payment of the loan for which it was given to secure, and since it is admitted that the note was not paid at maturity, and that eight months after the loan became due and payable the deed in escrow was delivered by the escrow holder to the defendant at the special instance and request of the plaintiff, to wit, on November 13,

1931, it is apparent that the plaintiff is not entitled to the reconveyance of the property and premises upon the payment of the mortgage debt, when ascertained.

■ Looking to the testimony of the defendant and her husband, their version of the delivery of the deed was, in short, as follows: That the plaintiff was unable to pay the amount of the mortgage debt as agreed in writing on November 4, 1931, to wit, $600; that he had been sued by the Las Vegas Lumber Company for a lumber debt contracted by a tenant of his amounting to over $300; that he did not want judgment to go against him for such debt and thus sacrifice his property at a sheriff's sale; that he had tried to sell the property to others, but could neither borrow the money nor sell the same; that plaintiff had offered to sell the land and premises for $1,000; that the defendant purchased the property for the consideration that defendant would assume a debt in the amount of $307.95, then due and owing by plaintiff to said Las Vegas Lumber Company, and the further consideration that, if and when the land and premises of plaintiff should be sold to the United States Government, the defendant and her husband would pay the plaintiff the difference between the sum of $1,000 and the aggregate of the sum of $600, plus said assumed debt of $307.95, such difference being the sum of $92.05. The court's findings of fact establish this as the true consideration for the delivery of the deed intended as a full settlement of all claims of the plaintiff to the land and premises and of all claims to a reconveyance thereof.

The plaintiff's version of the delivery of the deed was, in short, as follows: That on or about November 13, 1931, he stated to Dave Conger that he had tried to arrange settlement of his indebtedness to the lumber company, but that he had been sued therefor in the justice court at Las Vegas; that he did not want judgment to go against him, and that Dave Conger proposed that he turn over the property to the defendant, and that he (Dave Conger) and the defendant would prevent judgment from going against him for the lumber company's

debt. The plaintiff testified that the deed was delivered conditionally, namely, that the defendant and her husband would carry on and conduct for and on behalf of plaintiff the negotiations and transactions with the government for the sale and purchase of the land and premises, and out of the moneys received· from the government the defendant and her husband should deduct the amount of said assumed debt due and owing the lumber company, the amount of the taxes against the property, and, upon the sale and purchase of the property by the government the defendant and her husband would pay over the surplus over and above plaintiff's said indebtedness, less a reasonable sum to be allowed for their expenses and trouble incident to the transaction.

It was explained upon the trial that the secretary of the interior had appointed commissioners to appraise and determine the value of all privately owned lands which would be submerged by the construction and erection of the Hoover dam on the Colorado River, a government enterprise. It was explained upon the trial that several months prior to the delivery of the deed in question the land and premises described therein had been appraised by said commissioners, but it was not known at what price. It is conceded that within a few days after the delivery of the deed the parties received official information from the department of the interior that plaintiff's land and premises had been appraised by said commissioners at $3,080.

The substance of the plaintiff's testimony was that at the time of the delivery of the deed it was present in the minds of the parties that the land and premises described therein would eventually be taken over by the government at a price in excess of $2,500; that he at the time informed the defendant and her husband that he had reliable inside information that his land had been appraised at a price in excess of $2,500, and had been advised to withdraw the offer to sell the property for $2,500. This was denied by both the defendant and her husband, who took the position that, while they knew

that the land had been appraised by the government, they did not know at what price; that the defendant was the reluctant party, and the transaction was pressed upon her by plaintiff, for the reason that he was unable to pay his mortgage debt or his indebtedness to the lumber company, and stated for their own protection the Congers should prevent judgment going against plaintiff for the lumber bill. The witness testified that, as an inducement for the Congers to assume said indebtedness and take over the property for $1,000, he stated that he knew that, when the government came along, they would make some money on the property. The proof shows that the offer was accepted and the deed was delivered by the escrow holder to defendant. On the other hand, the plaintiff was just as positive that no such offer was made and that the deed was delivered upon the condition that the defendant would assume the payment of his debt to the Las Vegas Lumber Company, pay the taxes on the property and negotiate the sale to the government of the property and account to plaintiff for the excess of money received over and above plaintiff's indebtedness. If plaintiff's version of the transaction is to be accepted, the question for determination is not whether the delivery of the deed in escrow extinguished plaintiff's equity of redemption, but the question is whether the delivery of the deed so executed was impressed with an express trust on the part of defendant to sell the property and account to the plaintiff for the excess over and above his indebtedness. This question was not presented by the pleadings, but, since it is made the basis of plaintiff's contention that the transaction should be set aside and defendant compelled to reconvey the property to the plaintiff, we shall dispose of it. The fact that the special value of the property, as appraised by the government, greatly exceeds that agreed to be paid, is no criterion of the character of the transaction as disclosed by the evidence. In point of fact, the testimony, without conflict, shows that a price corresponding to that fixed could not be obtained by the plaintiff at and prior

to the time the deed was delivered. The plaintiff tried to borrow the money necessary to pay defendant from several parties, but could not do so, and the evidence shows that he tried to sell the property to others for $1,000. In Pierce v. Traver, 13 Nev. 526; Bingham v. Thompson, 4 Nev. 224, it was held, in substance, that the fact that the intrinsic value of the property exceeded the sum received by grantor affords no criterion of the transaction, if, in fact, a price corresponding to that value could not be obtained when the grantor tried to raise the money. If the defendant in this case dealt for the property as a speculation, knowing plaintiff's unfortunate condition, I should say defendant should be compelled to account to plaintiff for the excess of profit made by the transaction, for the reason that in principle a mortgagee is not entitled to speculate in his dealings with his mortgagor. Odell v. Montross, 68 N. Y. 499. In the case at bar the parties dealt with each other knowing that the title to the land would eventually be transferred to the government, and were aware that a special price had been placed upon the land by the government's agents. The plaintiff knew that a price corresponding to that fixed by the government could not be obtained for his property. There is nothing to show that the deed was obtained by fraud, undue influence, or unconscionable advantage. This court cannot say to what extent, if any, the defendant was influenced to take over the property by reason of the government's being an assured purchaser. There is not sufficient evidence to establish that the conveyance was impressed with an express, implied, or constructive trust.

It is argued that the unfortunate condition of the plaintiff, taken in connection with the profit to be made by the defendant out of the property, makes plaintiff the subject of the court's generous consideration. Parties in destitute circumstances are often compelled by their necessities to sell their property for less than its real value, but, if they obtain all that

they ask for it, or voluntarily accept what is offered without fraud, courts of equity have no jurisdiction to set aside the transaction. Pierce v. Traver, supra; De Martin v. Phelan (C. C.) 47 F. 761.

It is evident that the trial court considered the evidence sufficient to establish the fact that the plaintiff obtained all that he asked for the property. Since courts must respect contracts, even though the relation of the parties be that of mortgagor and mortgagee, I am of the opinion that the judgment in this case should be affirmed.

■ There is no merit in the contention that the deed in question is inoperative as a conveyance because of the fact that the name of Henrietta Hannig appears on the face of the deed as "Mrs. Hannig, grantor."

Certain rulings of the court in the admission and exclusion of evidence are relied upon for reversal of the judgment. In the main, the rulings are not erroneous and do not affect the substantive rights of the parties.

The judgment is affirmed.

ON PETITION FOR REHEARING

April 11, 1933.

*Per Curiam:*

Rehearing denied.