HENRY TEN EYCK, Appellant, *v.* OSCAR CRAIG et al., executors, etc., et al., Respondents.

Upon the sale of certain premises of S., on execution against him, C. became the purchaser. P. had a judgment against S., which, prior to the sale, he assigned to B., who, in fact, acted as agent for and took the assignment in his own name at the request of S., the latter paying the consideration. B., without consideration, and without the knowledge of S., reassigned the judgment to P., who, by virtue thereof, claimed to redeem; the sheriff received from him the amount required for that purpose, which he paid to C., and at the expiration of the term allowed for redemption, deeded the premises to P. P. subsequently deeded to C., who had notice of the fact of B.'s agency. In an action brought by the grantee of S. to redeem the premises, *held*, that the P. judgment, upon being assigned to B., was in law satisfied, and under it no valid redemption could be made; the sheriff's deed to P. was therefore void, and C. took nothing by his deed from P.; but that by taking it he did not waive or release his right as purchaser, and the title of S. or his grantee was not thereby relieved from the effect of the sale; that C. as such purchaser was the equitable owner; and that plaintiff, by omitting to redeem within the twelve months allowed to the judgment debtor or his grantee for that purpose, lost his right to retain the title.

A mortgagee in possession does not stand in such a relation of trust or confidence to the mortgagor as that he is prohibited from purchasing, for his own benefit, the title of the latter on an execution sale against him made upon a judgment in favor of a third person; and he may set up a title so acquired as a defence to an action by the mortgagor or his grantee to redeem.

C. held certain mortgages upon the premises in question; S., in order to secure him for becoming surety on an undertaking on appeal, executed to him another mortgage, and also assigned to him a lease of the premises, authorizing him to demand and receive the rents, and in case the tenant failed to pay rent or perform his covenants, and S. should be entitled to possession, to take possession and relet ; out of the rents received C. was to pay the insurance and interest on the mortgages, holding the balance to meet any liability on the undertaking, and when discharged therefrom, to account, etc. *Held,* that the assignment did not impose upon C. any duty which prevented him from purchasing, for his own benefit, at the execution sale.

The authorities as to the rights of trustees and *cestuis que trust,* and of mortgagors and mortgagees, collated and discussed.

(Argued April 5, 1875; decided September 21, 1875.)

APPEAL from order of the General Term of the Supreme Court in the fourth judicial department reversing a judgment in favor of plaintiff entered upon a decision of the court upon trial without a jury.  (Reported below, 2 Hun, 452; 5 T. & C., 65.)

This action was brought to redeem certain real estate known as " Congress Hall," in the city of Rochester, from incumbrances held by the defendants as executors of the estate of John Craig, deceased, and for an accounting of the rents and profits.

The facts as found by the trial court are substantially as follows :

On the 23d of April, 1860, Nelson P. Stewart, then being the owner in fee of the premises, executed a mortgage thereon, and on a farm in Erie county, to the defendant John Craig, to indemnify him for becoming Stewart's surety in an undertaking made to stay proceedings on a judgment recovered in the Supreme Court on the 24th day of October, 1859, in favor of Maria L. Dehon, executrix, against Stewart, for $10,184.83, on an appeal taken by Stewart from said judgment.  At the time of the execution of said mortgage, said Congress Hall property was subject to three prior mortgages, amounting to about $19,000, two of which were then owned by the defendant Craig, and the third by Asa Sprague, who

subsequently transferred it to Craig. The said property was also subject, at the time of the execution of said indemnity mortgage, to a lease executed by Stewart to Robert D. Cook, for the term of five years from the 1st day of May, 1860, at a rent of $3,600 a year, payable monthly in advance. On the 24th of April, 1860, Stewart assigned said lease and the rents payable thereon, to Craig, as further indemnity for his becoming surety as above stated, by an instrument in writing, of which the following is a copy, to wit:

" Whereas, on or about the 24th of October, A. D. 1859, one Theodore Dehon, of New York, recovered a judgment in the Supreme Court against Nelson P. Stewart, for the sum of $10,184.83, entered upon a report of referee, from which judgment said Stewart has appealed to the General Term of the Supreme Court, and for the purpose of staying proceedings upon the said judgment, the undersigned John Craig, has consented to sign and execute the necessary undertaking to stay the proceedings upon said judgment.

" Now, for the purpose of securing the said Craig for becoming such surety, in addition to other securities made to him, the said Nelson P. Stewart hereby sells, assigns and transfers to said Craig the annexed lease of Congress Hall, executed by R. D. Cook to me, and said Craig is hereby authorized to demand and receive the rents reserved by said lease for the term thereof, or until said Craig shall be relieved from liability on his undertaking, from which rents said Craig is to pay the interest upon the mortgages now on said premises held by himself and Asa Sprague; the insurance thereon, and the balance of said rents are to be held by said Craig to meet any liability upon his said undertaking upon the appeal aforesaid, upon which balances so remaining in his hands, said Craig is to allow interest to said Stewart.

· "And for the more ample protection of said Craig, it is hereby agreed that in case said Cook, from any cause, shall fail to meet his rents, or shall fail to perform his covenants, or to keep said house, and the said premises shall be vacated, or said lessor shall be entitled to the possession, that then, and

in that case, the said Craig shall have full power and authority to take the actual possession of said premises, and relet the same in the name of said Stewart, holding the lease and rents under his assignment for the term or period for which he shall remain responsible upon said undertaking; when said Craig shall be relieved of responsibility upon the said undertaking, he is to render an account and pay over the rents which may have accumulated in his hands as above provided. Rochester, April 24th, 1860.

(Signed)          "NELSON P. STEWART.
                  "JOHN CRAIG."

Craig was made liable as surety, and was compelled to and did pay $12,301.24 on said undertaking on the 7th of August, 1862. Craig foreclosed his indemnity mortgage, so far as it related to the property in Erie county, and realized therefrom the sum of $2,615.88. At the time when Craig signed said undertaking, and took said indemnity, said Congress Hall property was subject to a judgment theretofore recovered in the Supreme Court in favor of the Madison County Bank, or the trustees thereof, against Stewart, for the sum of $2,500 and costs, of the existence of which judgment Craig was ignorant at that time. On being informed of it, he refused to justify as a surety to said undertaking, unless he was indemnified against said judgment, and therefore Stewart executed a bond, dated the 1st day of June, 1860, and procured the same to be executed by George K. Johnson and the defendant Elisha C. Litchfield, as his sureties, in the penal sum of $5,000, conditioned to protect said Congress Hall property against the judgment last above mentioned, which bond was delivered to Craig, and he then justified as surety to the undertaking given on appeal. On the 5th day of December, 1863, Craig recovered a judgment on said last mentioned bond against Litchfield, for $5,179.69, which judgment Litchfield paid to Craig. On the 17th of December, 1860, the Congress Hall property was sold on an execution issued upon said judgment in favor of the Madison County

Bank, and was bid off at such sale by the defendant Craig, for the sum of five dollars. On the 17th of March, 1862, Daniel W. Powers, by virtue of a judgment recovered by him against Stewart, on the 26th of January, 1860, for $1,481.78, redeemed the Congress Hall property from said sale, and on the 21st of March, 1862, the sheriff, in completion of such sale, executed a deed of said property to Powers. On the 7th of May, 1864, Powers, by deed of that date, conveyed said property to the defendant Craig, in consideration of the sum of $1,753.53, paid by Craig. The judgment under which Powers redeemed had been sold and assigned by him before the redemption, and on the 10th of April, 1860, to Oliver M. Benedict, of Rochester, in consideration of the amount then due on the judgment, paid by Benedict to Powers at the time. On the day of the redemption, to wit, the 17th of March, 1862, Benedict reassigned the judgment to Powers, without any valuable or valid consideration. At the time of each of those assignments, and for several years next preceding that time, Benedict was the attorney of Stewart, and was his confidential adviser. He purchased said judgment and took the assignment of it in his own name, at the request of Stewart. And the money which he paid for it to Powers, was furnished by Stewart, or was replaced by him immediately after such payment, in pursuance of an arrangement between him and Benedict, made before the money was paid by Benedict. There is no evidence that the assignment of the judgment from Benedict to Powers, was authorized by Stewart, or that he knew of it. Craig, when he took the deed from Powers, had knowledge of the facts as to the relations between Benedict and Stewart, and as to the assignment of the judgments.

On the 27th of April, 1860, Stewart and his wife conveyed "Congress Hall" to Henry K. Sanger, by deed, subject to the several mortgages above stated, except the indemnity mortgage. Sanger died previous to July, 1864, leaving a will by which he gave to his wife all his estate, real and personal, and named her as sole executor. She, as devisee and execu-

trix, conveyed Congress Hall to the plaintiff Henry Ten Eyck, by deed dated 3d of January, 1867.

On these facts the court decided as matter of law, among other things, that the defendant Craig, on entering upon the collection of the rents on the assignment of the lease of the Congress Hall property, was in the position of a trustee for Stewart, in respect to the leased property, and his purchase of the same while he occupied that position, inured to the benefit of the *cestui que trust*, at his election. That when Benedict held the judgment under which Powers redeemed, he held it in trust for Stewart. Powers, as the assignee of Benedict, without consideration, took Benedict's right in the judgment and no more. When Powers redeemed, he took the land subject to the trust which attached previously to the judgment in his hands. That Craig was chargeable with notice of said trust. That Stewart, while he owned the Congress Hall property, had the right to redeem the same, on paying to Craig the amount of his liens and advances, over and above his receipts. That the plaintiff Ten Eyck, by means of the successive conveyances above stated, has succeeded to such right of Stewart to redeem said property, and is entitled to redeem.

*J. P. Whittemore* and *H. R. Selden* for the appellant. The statute against champerty does not apply in this case to prevent recovery by the alienee of the legal title. (*Jackson* v. *De Lancey*, 13 J. R., 537; *Jones* v. *Clark*, 20 id., 56–62; *Jackson* v. *Davis*, 5 Cow., 123; 2 R. S., 294, § 86; 4 Kent's Com., 447; *Thallimer* v. *Brinkerhoff*, 3 Cow., 646, 647; *Small* v. *Mott*, 22 Wend., 403; *Campbell* v. *Jones*, 4 id., 310; *Crary* v. *Goodman*, 22 N. Y., 117; H. & W. Notes to 2 W. & T. L. Cas. in Eq., 574, 592; 72 Law Lib., 203, 222; Code, § 111; 3 Cow., 645, 646; *Wood* v. *Griffith*, 1 Swanst., 55, 56; *Allen* v. *Smith*, 1 Leigh [Va.], 231; *Baker* v. *Whiting*, 3 Sumn., 476; Blanchard on Lim., 74; 2 Pres. on Ab. of Tit., 375; Lewin on Trusts, note *h; Clapp* v. *Bromagham*, 9 Cow., 556; *Zeller* v. *Eckert*, 4 How. [U. S.], 289–296;

*Hunt* v. *Amidon*, 4 Hill, 348; *Hagerty* v. *Pitman*, 1 Paige, 298; 4 Kent's Com., 302, 303, 307, 310.) On May 8, 1864, Sanger had a right to redeem the property. (4 Kent's Com., 160, 302–304; B. & T. on Trusts; 1 R. S., 729, § 61; *Baker* v. *Whiting*, 3 Sumn., 475.) The assignment of the Cook lease created in Craig an estate in the land. (1 Coke Inst., 42, 43; 2 Blk., 155, 157, 161; Story's Eq. Jur., § 998 and note; 1 R. S., 722, § 5; 725, § 36; 730, § 67; 4 Kent's Com., 307; *Birch* v. *Wright*, 1 T. R., 378.) Sanger's right to redeem has not been extinguished. (*Craft* v. *Merrill*, 14 N. Y., 456; *Wood* v. *Colvin*, 566; 10 Pet., 177, 212; *Tompkins* v. *Anthon*, 4 Sandf. Ch., 97–121; *Montague* v. *Dawes*, 14 Al., 373; *Anderson* v. *Van Allen*, 12 J. R., 343–345; 2 Hill, 566; Coote on Mort., 366, 368; 1 Hilt. on Mort. [1st ed.], chap. 15, §§ 1–18; *Ld. Trimleston* v. *Hamill*, 1 B. & B., 385; *Birch* v. *Wright*, 1 T. R., 378; *Vanmetre* v. *Griffith*, 4 Dana, 92–95; *Morgan* v. *Boone*, 4 T. B. Mon., 297; *Robinson* v. *Pett*, 3 P. Wms., 251, note *a*; *Silvester* v. *Jarman*, 10 Price, 84; 3 Fonbl. Eq., chap. 1, § 3, p. 257.) An agent cannot purchase for his own use the property he has in charge without the consent of his principal. (*Van Epps* v. *Van Epps*, 9 Paige, 241; *Torrey* v. *Bk. of Orleans*, id., 663; *Greenlaw* v. *King*, 5 Lond. Jur., 18; *Rings* v. *Binns*, 10 Pet., 269, 281; *Michaud* v. *Girod*, 4 How. [U. S.], 556; *Green* v. *Winter*, 1 J. Ch., 36; *Parkist* v. *Alexander*, id., 397; *Rogers* v. *Rogers*, Hopk., 524; *Gardner* v. *Ogden*, 22 N. Y., 327, 346, 347; 1 Story's Eq. Jur., § 316; 2 id., § 1211; Will. Eq. Jur., 188, 190; *Moore* v. *Moore*, 5 N. Y., 256; *Colburn* v. *Morton*, 3 Keyes, 296.) The assignment of the lease to Craig created a trust in him. (Story's Eq. Jur., § 998; 2 id., § 1275; Will. Eq. Jur., 186; Lewin on Trusts, 15–21; *Van Epps* v. *Van Epps*, 9 Paige, 241; T. & B. on Trusts, 570, 580, 581; *Noyes* v. *Blakeman*, 6 N. Y., 579, 580; *Ld. Trimleston* v. *Hamill*, 1 B. & B., 377, 385; *Oliver* v. *Court*, 8 Price, 127; *Colburn* v. *Morton*, 3 Keyes, 305, 309; *Reg.* v. *Comrs.*, 15 Ad. & El., 562; *King* v. *Cushman*, 41 Ill., 31, 38; 1 Wash. on R. P., 583, and notes 5, 6,

7 ; *Dickinson* v. *Codwise,* 1 Sandf. Ch., 226–227 ; *Brown* v. *Simons,* 44 N. H., 475 ; *Gardner* v. *Ogden,* 22 N. Y., 327, 343–350 ; *Slee* v. *Manhat. Co.,* 1 Paige, 80 ; *Holdridge* v. *Gillespie,* 2 J. Ch., 30 ; *Davoue* v. *Fanning,* id., 252, 260–267 ; *Moore* v. *Moore,* 5 N. Y., 256 ; *Greenlaw* v. *King,* 3 Beav., 61 ; 2 Madd. Ch. Pr., 126 ; *De Caters* v. *De Chaumont,* 3 Paige, 178 ; *Campbell* v. *Walker,* 5 Ves., 478 ; *Steele* v. *Babcock,* 1 Hill, 530, 531.) Plaintiff has the same right of redemption as Sanger had. (4 Kent's Com., 162.) There was no defect of parties. (Story's Eq. Pldgs., § 84, note 1 ; *Platt* v. *Squire,* 12 Metc., 494.) A surety is entitled to the benefit of securities put into the hands of a creditor by his principal. (1 Story's Eq. Jur., § 499 ; *Hayes* v. *Ward,* 4 J. Ch., 123, 130 ; *Ellsworth* v. *Lockwood,* 42 N. Y., 98 ; *Craythorne* v. *Swinburn,* 14 Ves., 162.) It is immaterial whether a party is holden personally as surety or whether his property only is holden. (*Neimcewicz* v. *Gahn,* 3 Paige, 614, 642 ; *Gahn* v. *Neimcewicz,* 11 Wend., 312, 324 ; *Halsey* v. *Reed,* 9 Paige, 452 ; *Marsh* v. *Pike,* 10 id., 595.) Craig could not be permitted to speculate upon his principal or co-sureties by purchase of property pledged as his and their indemnity. ( *Wynn* v. *Brooke,* 5 Rawle, 106, 110 ; *Hickman* v. *McCurdy,* 7 J. J. Marsh., 555, 560 ; *Hays* v. *Ward,* 4 J. Ch., 123, 130 ; *Cheesebrough* v. *Willard,* 1 id., 414 ; *Stevens* v. *Cooper,* id., 430, 431 ; 1 Comst., 600 ; *Comegys* v. *State Bk.,* 6 Ind., 357 ; *Hall* v. *Robinson,* 8 Ire. ; *Brown* v. *Ray,* 18 N. H., 102 ; *Agnew* v. *Bell,* 4 Watts, 31 ; *Moore* v. *Moore,* 4 Hawks, 358 ; 9 Ohio, 106 ; *Picket* v. *Picket,* 3 Den., 6–12 ; 13 J. R., 537 ; *Loomer* v. *Wheelright,* 3 Sandf. Ch., 135, 157.) Craig's claim of an existing equity against Sanger's right of redemption is unfounded and contrary to equity and good conscience. (*Freelove* v. *Cole,* 41 Barb., 318 ; 16 N. Y., 285 ; Story's Eq. Jur., §§ 310, 314 ; 1 J. Ch., 409 ; 6 Paige, 32 ; 50 N. Y., 344 ; *Burhans* v. *Van Zandt,* 7 id., 523, 527.)

*Geo. F. Danforth* for the respondents. Plaintiff was not entitled to recover. (*Bergen* v. *Bennett,* 1 Cai. Cas., 1–20 ;

*Slee* v. *Manhat. Co.*, 1 Paige, 48; *Hoyt* v. *Martense*, 16 N. Y., 231.) Craig had a right to purchase the property. (*Mott* v. *Wakely*, 3 Edw., 590; *Chambers* v. *Waters*, 3 Sim., 42; *Taylor* v. *Cleminson*, 11 C. & F., 648; *Williams* v. *Townsend*, 31 N. Y., 415; *Chapman* v. *Mull*, 7 Ired. Eq., 292; 1 Hil. on Mort., 360, 361; Kerr on Frauds, 162; 2 Story Eq., 278, note 3; *Harmon* v. *Roberts*, 6 Fla., 71; *Walthall* v. *Rives*, 34 Ala., 92; *Cameron* v. *Irwin*, 5 Hill, 280; *King* v. *State Mut. Fire Ins. Co.*, 7 Cush., 7; *Hubbell* v. *Manhan*, 53 N. Y., 228.) The purchase by Craig at the sheriff's sale, and his subsequent purchase after the redemption by Powers, were valid as to all persons except the *cestui que trust.* (*Hubbell* v. *Medbury*, 53 N. Y., 98; 3 Com., 53; *Olcott* v. *R. R. Co.*, 37 N. Y., 567; *Boerum* v. *Schenck*, 41 id., 182.) As against the *cestui que trust*, they might become unimpeachable by acquiescence or by mere lapse of time. (Kerr on Law of Frauds, 303; *Morris* v. *Phelps*, 5 J. R., 48; 1 Cai. Cas., 19.) Plaintiff's deed was void. (*Burhans* v. *Van Zandt*, 7 Barb., 91; *Mosher* v. *Yost*, 33 id., 277–281; *Crary* v. *Goodman*, 22 N. Y., 170; *Fish* v. *Fish*, 39 Barb., 513; *Webster* v. *Van Steenbergh*, 46 id., 211; *Livingston* v. *Proseus*, 2 Hill, 526; *Lowbe* v. *Kelly*, 17 Abb., 452; 9 Bosw., 494.) Where there are different sureties for the same debt, all are entitled to avail themselves of every security which any one has received from the debtor for the payment of the debt or his indemnity. (*Deering* v. *Earl of Winchelsea*, 2 B. & P., 270; *Mayhew* v. *Crickett*, 2 Swans., 191, 192; *Newton* v. *Chorlton*, 10 Hare, 650, 651; *Elwood* v. *Diefendorf*, 5 Barb., 398, 413; *Ramsey* v. *Lewis*, 30 id., 403; *Agnew* v. *Bell*, 4 Watts, 31; *Carpenter* v. *Kelley*, 9 Ohio, 106; *Comegys* v. *State Bank*, 6 Ind., 357; *Livingston* v. *Van Rensselaer*, 6 Wend., 63.)

ANDREWS, J. Sanger, the grantee of Stewart, had the legal title to the Congress Hall property, December 17, 1860, when it was sold on the judgment in favor of the Madison County Bank against Stewart. That judgment was for

$2,675.24, and was rendered October 25, 1859, before Stewart conveyed to Sanger, and was a lien upon the property. John Craig, the defendant's testator, became the purchaser, on the sale, for the sum of five dollars, and received the sheriff's certificate. The property at the time was incumbered by three mortgages, to the amount of about $19,000, owned by Craig, and by the Dehon judgment, for $10,184.83, which were prior liens to the Madison County Bank judgment on which the sale was made; and the property was proved, by witnesses on the trial, to have been worth at the time of the sale from $20,000 to $25,000.

On the 17th day of March, 1862, one Daniel W. Powers presented to the sheriff who made the sale a transcript of a judgment in his favor, against Stewart, for $1,481.78, perfected January 26, 1860, and other papers, and claimed the right to redeem from the sale by virtue of the judgment. Among the papers was a copy of an assignment of the judgment from Powers to O. M. Benedict, dated April 10, 1860, and of a re-assignment from Benedict to Powers, dated March 17th, 1862, and an affidavit of Powers that $1,703 was due on the judgment. Powers paid to the sheriff the amount required to make a redemption, who received it and paid it to Craig; and thereafter, on the 21st of March, 1862, in completion of the sale, executed a deed to Powers. Subsequently, on the 7th day of May, 1864, Powers, in consideration of $1,753.33, quit-claimed the premises to Craig.

It will be convenient in examining the questions which arise in the case to leave out of view for the present the facts relied upon as establishing a trust relation between Craig and Stewart, which disabled Craig from acquiring a title to the property hostile or adverse to Stewart or his grantee, and to consider the position of Sanger and his relation to the property after the sale and conveyance by the sheriff, upon the assumption that Craig as purchaser on the sale and the grantee of the redemption title was unaffected by any special disability, and acquired the same rights through the sale and the subsequent proceedings as if at the time of the pur-

chase he had been a stranger to Stewart and Sanger, owing them no duty and bound by no obligation to protect the equity of redemption. It is not claimed that there was any fraud or irregularity in the sale on the bank judgment. The judgment was unpaid; the sale was open and fair, and so far as appears was not procured by the intervention of Craig. The sum bid, so far as appears, was at the time the full value of the interest of Sanger in the property. There is nothing which in any manner tends to impeach the *bona fides* of the sale. It is claimed, however, that the redemption was void, on the ground that the judgment under which it was made had been paid by Stewart, the judgment debtor, before the redemption, and was not at the time a lien upon the land.

The learned judge at Special Term, found that Benedict, to whom Powers assigned the judgment, March 10th, 1860, acted as the agent of Stewart in procuring the assignment, and took it in his own name at Stewart's request, and that Stewart either furnished Benedict the money which he paid Powers for the judgment, or if Benedict advanced it it was immediately replaced by Stewart, in pursuance of an arrangement between him and Benedict before the money was advanced; and the further fact is found that the re-assignment by Benedict to Powers was without consideration and without the knowledge or authority of Stewart. The learned counsel for the plaintiff, while claiming that the redemption was under the circumstances absolutely void, presents the alternative proposition, that if it was not void it was a redemption in trust for Stewart's grantee, Sanger, and that Craig took Power's title subject to the same trust which affected it in the hands of his grantor. Upon the facts found, the Powers judgment on being assigned to Benedict was, in law, satisfied. Payment by a debtor to his creditor of his debt extinguishes it; and when Stewart through his agent paid the judgment it was gone. It could not be kept alive by taking an assignment in the name of a third person for his benefit. (*Harbeck* v. *Vanderbilt*, 20 N. Y., 395.) This

is certainly the general rule; and if under special circumstances this result would not follow, there is nothing in the circumstances under which the assignment to Benedict was made which, in law or equity, prevents the operation of the principle stated. Stewart was the owner of the Congress Hall property when the judgment was assigned to Benedict, and no reason (upon the findings) can be suggested for his keeping the judgment outstanding in the name of a third person unsatisfied of record, unless it was for the purpose of overreaching or embarrassing his creditors.

I am inclined to agree with the plaintiff's counsel in the proposition, that under this judgment no valid redemption could be made, and that the deed to Powers on the assumed redemption by him was void.

The statute only authorizes a redemption by creditors who have judgments which are liens on the premises. The sheriff in selling land on execution and in allowing redemptions, and conveying the premises pursuant to the sale or any redemption therefrom, acts under a statutory power, and the power must be pursued. If he fails to comply with the statute, or assumes to act without authority, his acts (except as to *bona fide* purchasers whose rights in certain cases are saved by the statute), are void. (*Wood* v. *Colvin*, 2 Hill, 566; *Croft* v. *Merrill*, 14 N. Y., 456.) And when a creditor claiming to redeem under a judgment which in fact has been satisfied, induces the sheriff to allow the redemption, and he obtains a deed, the deed is I think void. If there is in fact no judgment, there is no creditor and no right of redemption.

Craig, by the conveyance from Powers, took his right only. It is found by the judge that Craig when he took his deed had notice of the circumstance under which the assignment to Benedict was made. It is unnecessary to consider whether if he had been a *bona fide* purchaser from Powers without notice his position would have been changed. Assuming therefore, that Craig took nothing by the deed from Powers and cannot stand upon that title, yet the title

of Sanger was not thereby relieved from the effect of the sale on execution and his omission to redeem within twelve months thereafter, that being the time to which the right of the judgment debtor or his grantee to make redemption is limited. This time had expired three months before the redemption by Powers. Sanger had lost his right to retain the title to the property, and Craig was entitled to a conveyance at the end of the fifteen months, subject only to the contingency of a redemption by creditors. If there had been no redemption by Powers, and no conveyance by the sheriff, Sanger could not have maintained an action to redeem, for the reason that Craig as purchaser on the execution sale would have been entitled to a conveyance of the land. The equitable title in the case supposed would have been in him and not in Stewart or Sanger, and the circumstance that Craig took a void title under Powers did not operate as a waiver or release in favor of Stewart or Sanger of the rights of Craig as purchaser on the execution sale. It was clearly not so intended between Powers and Craig as the consideration paid by Craig to Powers for the conveyance by the latter shows. Stewart and Sanger were not parties to that transaction; it was *res inter alios acta*. Nor had Stewart, or Sanger through him, any equity to claim that this was the effect of that conveyance. Stewart had by his own act kept the Powers judgment outstanding as an apparent lien on the property after it had been paid. It does not lie with him to say that the redemption was void to defeat the deed from Powers to Craig, and then to claim that Craig by taking it lost his rights as purchaser on the sheriff's sale. Sanger as the grantee of Stewart stands in no better position than his grantor. He claims under and through him. For the reasons stated I am of opinion, leaving out of view the alleged trust relation between the parties, that Craig as purchaser on the execution sale has become the equitable owner of the property and that no right of redemption remains in Stewart or his grantees.

The next and principal question to be considered is,

whether Craig, at the time of the sale, occupied such a relation to the property, or to Stewart or Sanger, that he was disabled from purchasing for his own benefit, and claiming the title adversely to them. If he occupied that relation, he cannot set up any right acquired as purchaser on the sheriff's sale in bar of their right to redeem. Purchases by trustees, or persons occupying fiduciary positions, in contravention of their trust or duty, are held in equity to be made for the benefit of the *cestui que trust*, at his election. No irredeemable title can be acquired upon such a purchase. And if the purchase by Craig was within the principle which prohibits a purchase by a trustee, it is an immaterial circumstance that the time within which a statutory redemption might have been made has expired. The right of redemption exists in favor of the *cestui que trust*, and those in privity with him, independently of the statute, upon general principles of equity, and may be enforced at any time within the period allowed by the statute of limitations, or the rule of courts of equity regulating the jurisdiction.

The rule which prohibits a trustee from purchasing the property of a *cestui que trust* stands upon the proposition stated by the chancellor in *Whichcote* v. *Lawrence* (3 Ves., 740), that one who undertakes to act for another in any matter, shall not in the same matter act for himself. It applies in all cases where the duty which the trustee has to perform in respect to the property is inconsistent with his becoming a purchaser for his own use. And the purchase will not be allowed to stand, although the court may not be able to discover any wrong intention on the part of the trustee, or that he has gained any advantage in the transaction. The rule is inflexible, that he shall not place himself in a position where his interest is or may be in conflict with his duty. The reason of the rule, as remarked by Kent, J., in *Bergen* v. *Bennett* (1 Cai. Cas., 19), is to bar the more effectually every avenue to fraud. Such a purchase, though it may not originate in any purpose to defraud, is a constructive fraud, because the natural tendency is mis-

chievous and harmful. The rule is founded in the highest wisdom. It recognizes the infirmity of human nature, and interposes a barrier against the operation of selfishness and greed. It discourages fraud by taking away motive for its perpetration. It tends to insure fidelity on the part of the trustee, and operates as a protection to a large class of persons whose estates, by reason of infancy, infirmity, or other causes, are intrusted to the management of others. The rule is not limited in its application to those who are trustees strictly, holding the legal title to the thing purchased. ( *Van Epps* v. *Van Epps*, 9 Paige, 237.) It applies to agents and persons standing in relations of trust and confidence to others, which involve duties inconsistent with their dealing with the property as their own. The books are full of cases illustrating its application, and it will be sufficient to refer to a few of them. (*Fox* v. *Mackreth*, 2 Bro. C. C., 400 ; *Oliver* v. *Court*, 8 Price, 127 ; *Van Horne* v. *Fonda*, 5 J. Ch., 388 ; *Van Epps* v. *Van Epps*, *supra* ; *Moore* v. *Moore*, 5 N. Y., 256 ; *Gardner* v. *Ogden*, 22 id., 327 ; *Michoud* v. *Girod*, 4 How. [U. S.], 506.)

It is claimed that Craig was disabled from purchasing the Congress Hall property at the sheriff's sale, and holding it adversely to Stewart and Sanger, under the rule just adverted to. There are two grounds upon which this claim is based : First, that Craig at the time was mortgagee in possession ; and, second, that the relation of trustee and *cestui que trust*, in respect to the property, was created between Craig and Stewart by the instrument of April 24, 1860, which precluded him from purchasing for himself, or otherwise than as a trustee for Stewart, or his grantee. Assuming that the learned counsel for the plaintiff is correct in the position that Craig, at the time of the sheriff's sale, stood, in relation to the premises, in the character of mortgagee in possession, the question arises, whether a mortgagee in possession can buy the mortgagor's title on an execution sale, upon a judgment in favor of a third person against the mortgagor, and set up a title under the sale, as a defence to an action by the

mortgagor to redeem. Another mode of stating the question is: Is a mortgagee in possession a trustee for the mortgagor, so that he will not be allowed to buy in the equity of redemption on a sale upon an independent lien held by a third person?

Unless the mortgagee in possession is a trustee for the mortgagor, there is no ground upon which he can be precluded from purchasing. It is clear that no trust relation between the mortgagor and mortgagee is created by the execution of the mortgage, unaccompanied by possession. The mortgage under our law is a security merely. The mortgagee has, by virtue of his mortgage, no estate in or title to the land, or the right of possession, before or after the mortgage debt becomes due. He owes the mortgagor no duty to protect the equity of redemption. The power of sale which usually accompanies a mortgage is given to enable him, by an adverse proceeding, to sell the equity of redemption for the payment of the mortgage debt. The objection that he could not become the purchaser at his own sale under the power, has been removed by the statute when the foreclosure is by advertisement (2 R. S., 546, § 7); and a provision is inserted in every decree for the sale of mortgaged premises, unless otherwise specially ordered, that the plaintiff may become the purchaser. (Rule 73.) And he may buy in any outstanding title and hold it against the mortgagor. (*Cameron* v. *Irwin*, 5 Hill, 280; *Williams* v. *Townsend*, 31 N. Y., 415; *Shaw* v. *Bunny*, 13 Week. R., 374; S. C., 2 De G., J. & S., 468.)

There is, in truth, no relation analogous to that of trustee and *cestui que trust* between the mortgagor and mortgagee created by the execution of the mortgage. The mortgagee is not a trustee of the legal title, because, under our law, he has no title whatever. (*Kortright* v. *Cady*, 21 N. Y., 342, and cases cited.) He may deal with the mortgagor, in respect to the mortgaged estate, upon the same footing as any other person; he may buy in incumbrances for less than their face, and hold them against the mortgagor for the full

amount; he may do what any other person may do, and his acts are not subject to impeachment, simply because he is mortgagee. (*Darcy* v. *Hall*, 1 Vern., 48; *Knight* v. *Majoribanks*, 2 MacN. & G., 10; *Chambers* v. *Waters*, 3 Sim., 42; 3 Sug. on V. and P., 227.)

Nor is the mortgagee converted into a trustee by taking possession as mortgagee of the mortgaged property, so as, in general, to prevent his purchasing an outstanding title, or under another lien. Under the English law he has the right to the possession, because he has the legal title to the land. Under our law he cannot obtain possession until foreclosure, except by the consent of the mortgagor, because until that time he has no title. A mortgagee is often called a trustee, and in a very limited sense this character may be attributed to him. There may be a duty resting upon a mortgagee in possession to discharge a particular claim against the land. If in such a case he omits to do it, and allows the land to be sold on such a claim, and becomes the purchaser, he would hold the title in trust for the mortgagor. A mortgagee in possession is allowed, and it may be his duty, to pay taxes on the land out of the rents and profits. If he suffers the land to be sold for taxes in violation of his duty, and purchases on the sale, he would upon general principles be deemed to hold the title as trustee. So, if a mortgagee is allowed to take possession and undertakes to pay the interest on other liens out of the rents and profits and fails to do so, he could not purchase the land for his own benefit in hostility to the mortgagor on a foreclosure of an incumbrance for non-payment of interest which he was bound to pay. A mortgagee in possession is bound to account for the rents and profits; and in that respect, as was said by SHAW, C. J., in *King* v. *Insurance Co.* (7 Cush., 7), he may be denominated a trustee. But, except in some special sense, that is not the relation he bears to the mortgagor. The relation of mortgagor and mortgagee is explained in the admirable judgment of Sir THOMAS PLUMER, in the leading case of *Cholmondelly* v. *Lord Clinton* (2 Jac. & Walk., 183).

He says: " It is only in a secondary point of view and under certain circumstances, and for a particular purpose that the character of a trustee constructively belongs to a mortgagee. No trust is expressed in the contract, it is only raised by implication in subordination to the main purpose of it, and after that is fully satisfied its primary character is not fiduciary." And again: " The mortgagee when he takes possession is not acting as a trustee, but independently and adversely for his own benefit." A mortgagee in possession may purchase from a prior mortgagee and get an irredeemable title. (*Kirkwood* v. *Thompson,* 2 De G., J. & S., 613, and cases cited; *Parkinson* v. *Hanbury,* 2 D. & S., 143; S. C., 2 De G. & S., 450; see also, *Shaw v. Bunny, supra ; Knight* v. *Majoribanks, supra.*) Lord CRANWORTH, in *Kirkwood* v. *Thompson,* referring to the fact that the mortgagee at the time of the purchase was in possession, says: " That makes no difference ; being in possession could only make a difference if it created an obligation between the mortgagee and mortgagor, which would not have existed if he had not been in possession. Nothing of this sort is suggested; no duty arises on being in possession except to account in a way onerous to the mortgagee."

A mortgagee in possession is sometimes spoken of as a tenant and as having the legal rights of a tenant. (2 Wash., 150.) The analogy is not very close between the two relations; but it is difficult to see any reason for denying the right of a mortgagee to purchase and hold adversely to the mortgagor in a case when a tenant in possession would be allowed to purchase and hold against the landlord ; and yet a tenant may purchase the demised premises on a sale on execution against the landlord, and when his title is perfected, may set it up in bar of a recovery for rent thereafter accruing on the lease. (*Nellis* v. *Lathrop,* 22 Wend., 121.)

The first ground stated upon which it is claimed that Craig was disabled from purchasing on the sheriff's sale, viz., that he was the mortgagee in possession, cannot, I think, be supported ; and it remains to consider whether such disability

existed by reason of the agreement of April 24, 1860. The purpose of that agreement was to secure Craig for becoming surety for Stewart on the undertaking on the appeal from the Dehon judgment. This purpose is recited in the instrument. The object was the protection of Craig; and if any trust in favor of Stewart resulted from the provisions of the instrument it was incidental and collateral to its primary intent.

The condition of the property at the time was this: Stewart was the owner in fee subject to mortgages held by Craig and Sprague, and to the indemnity mortgage also held by Craig, executed before the agreement of April 24, 1860, but given for the same purpose. . The land was also subject to the Dehon, the Madison County Bank and the Powers judgments. Stewart had leased the premises to Cook for five years from May 1, 1860, at an annual rent of $3,600, payable monthly, with a covenant of renewal. The legal estate was therefore divided as follows: Cook had a term of years in the land and Stewart a reversion in fee expectant thereon. Stewart then, by the instrument of April 24, 1860, assigned to Craig the Cook lease, and authorized him to demand and receive the rents for the term thereof, or until he should be relieved from his liability on the undertaking; and Craig was also authorized, for his more ample protection (as the instrument recites), in case Cook should fail to pay the rent, or perform his covenants, or Stewart should be entitled to the possession, to take actual possession of the premises, and relet them in Stewart's name, and hold the lease and rents, so long as his liability on the undertaking continued. Craig was to pay out of the rent interest on the mortgages, and insurance, and hold the balance to meet any liability on the undertaking, and when discharged therefrom was to render an account, and pay over to Stewart the accumulated rents and interest. A question was made, on the argument, whether Craig by the assignment acquired any legal estate or interest in the demised premises. The assignment was of the lease and rent to accrue thereon. The ultimate reversion in fee undoubtedly remained in Stewart; but a lessor

may grant a part of his reversion ; and the legal effect of an assignment by the lessor of the lease and rents is to give to the assignee an interest in the reversion coextensive with the term assigned. (*Burton* v. *Barclay*, 7 Bing., 745 ; *Hughes* v. *Robotham*, Cro. Eliz., 302 ; Bac. Abr., Leases, N. 186.) In *Burton* v. *Barclay*, Wilde, sergeant, *arguendo*, said : " That according to the definition given by Plowden, 160 *a*, the word reversion has two intendments; one, the estate left in the lessor, during the continuance of the particular estate demised ; the other, the returning of the land after the expiration of the term," and this view was substantially adopted by the court in deciding the case.

In the case at bar, such an interest in the land passed to Craig, by the assignment, as was necessary to give him all the remedies of the lessor against the lessee. This was essential to his security. (*Childs* v. *Clark*, 3 Barb. Ch., 58.) The interest, however, which he took in the land, whatever it was, was uncertain and incidental merely, and even if the assignment had been absolute, was not the subject of sale on execution. (*Payn* v. *Beal*, 4 Denio, 405.)

If Craig was incapacitated from purchasing on the sheriff's sale by reason of the agreement of April 24, 1860, it is because it established a relation between the parties, or imposed a duty on Craig, which was inconsistent with his becoming a purchaser for his own use. The agreement did not make it his duty to discharge the land from the lien of the bank judgment. On the contrary this duty was expressly assumed by Stewart by his bond of June 1, 1860, given to induce Craig to justify as surety on the undertaking on appeal. Craig did undertake, by the agreement, to pay out of the rents the interest on the mortgages, and if the land had been sold for non-payment of interest, and he had purchased on the foreclosure, a different question would have been presented. The existence of an estate held under another does not *ipso facto* preclude the occupant from buying and holding to himself an adverse title. A tenant may bring title adverse to his landlord, although from reasons peculiar to that relation, he is precluded

from asserting it until after he has surrendered the possession. (1 Wash. on Real Prop., 492.) So, as has been shown, a tenant may buy in the reversion, or a mortgagee in or out of possession may buy in the equity of redemption, on a compulsory sale on a distinct lien against the owner. It may have been the interest of Stewart and those in privity with him, to retain the title, and the beneficial enjoyment of the property which was defeated by the sale on execution, and the lapse of the statutory period of redemption, but the sale alone did not divest the title of Stewart or Sanger. They, or either of them, had twelve months in which to redeem, and the right of redemption was lost by their laches.

I am unable to discover any duty arising out of the contract of April 24, 1860, or the circumstances resting upon Craig which debarred him from purchasing, on his own account, on the execution sale. He was, in some sense, a trustee of the rents received under the arrangement, and was bound to dispose of them as required by the agreement, and this was the extent of his duty. He was not bound to protect Stewart against the loss of the rents through a sale of the land on the bank judgment. If a mortgagee in possession may purchase for himself on a foreclosure of another mortgage, or buy in an outstanding title, then *a fortiori* could a person in the position of Craig. The mortgagee under the English law has the entire legal title, and so far as he is regarded as trustee, the trust is the whole interest of the mortgagor. Craig at most was a trustee of the rents for a term only. He had by the agreement no interest as trustee or otherwise in the fee which he purchased on the execution sale.

The conclusion which I have reached is adverse to the existence either in Stewart or Sanger of a right to redeem, and it becomes unnecessary to consider whether, assuming such right to exist, the plaintiff, as grantee of Mrs. Sanger, succeeded to it. The rule which avoids purchases made in violation of his duty at the election of the *cestui que trust*, is a valuable one and ought not to be impaired by

engrafting upon it exceptions, or indulging in subtle refinements and distinctions to withdraw a particular case out of its influence. But after careful consideration, I am unable to perceive that the facts of this case bring it within the rule, and am therefore of opinion that the order should be affirmed, and judgment absolute given for defendants, pursuant to stipulation, with costs.

All concur; except CHURCH, Ch. J., not voting. FOLGER, J., not sitting.

Order affirmed, and judgment accordingly.