In the Matter of the Judicial Settlement of the Account of CALEB RANDALL, as Administrator, etc., of HARVEY RANDALL, Deceased.

*Duty of an administrator to the estate — purchase by an administrator of an interest therein — when it inures to the benefit of the estate — purchases by trustees of claims against or interests in the trust estate.*

It is the duty of the administrator of an estate to husband it and care for it in order to create as much of a fund as possible for division among the heirs and next of kin of the decedent; he is to deal with it for their benefit exclusively, not for his own, and he is to deal with them in relation to it for their benefit, not for his own. The rule is inflexible that a trustee shall not place himself in a position where his interest is or may be in conflict with his duty.

The interest of an administrator of an estate, as a purchaser of the shares of two of the next of kin of the decedent therein, is necessarily inconsistent with the duty he owes to the beneficiaries of the estate; and where the administrator, who is also an heir at law and next of kin of a decedent, attempts to purchase the interest of another of the heirs at law and next of kin in the estate for his sole benefit and advantage, such purchase inures to the benefit of the estate.

As a general rule the purchase of claims against, interests in, or legacies payable out of, an estate by a trustee of such estate, is invalid when such interests are purchased for his own benefit; and where such purchases have been made and have resulted profitably to the trustee, it will be held that they were made for the benefit of the estate, and if loss has resulted therefrom the trustee will be charged personally therewith.

APPEAL by Caleb Randall, as administrator, etc., of Harvey Randall, deceased, from portions of a decree of the Surrogate's Court of the county of Washington, entered in the office of the Washington County Surrogate's Court on the 9th day of January, 1893, modifying and settling as modified his accounts as such administrator, and also from the orders made on the 19th day of November, 1891, and entered in said clerk's office, allowing Sarah Randall and Jane Randall to intervene as parties interested in the estate.

*L. Fraser*, for the appellant.

*S. W. Russell*, for the respondents, Sarah Randall and Jane Randall.

HERRICK, J.:

This is an appeal from a decree made by the surrogate of Washington county settling the accounts of the appellant, Caleb Randall, as administrator.

The decedent, Harvey Randall, died in 1890, without leaving any last will and testament, and leaving him surviving five sisters and two brothers his only heirs and next of kin, two of such sisters being named Sarah and Jane Randall.

The surrogate found that the deceased left an interest in real estate to the value of $16,000 or more, and personal estate, which at the time of the decree was of the value of $53,775.71, and that after the payment of the debts and funeral expenses there was for distribution by the administrator among the respective heirs and next of kin on November 16, 1891, a balance of $51,913.22; and that Caleb Randall, Caleb Randall as committee for Aaron Randall, a lunatic, Jane Randall, Sarah Randall, Angeline Andrews, Maria Seers and Caroline M. Randall were each entitled to have and receive one-seventh of such balance, except as the same had been reduced by way of payments or advancements properly applicable as payments thereon.

The appellant takes no exception upon this appeal to the findings or the decree of the surrogate, except in so far as they relate to Sarah Randall and Jane Randall. To Sarah Randall the surrogate found that there was a balance due of $2,911.83, and to Jane Randall a balance of $3,447.70.

He appeals from so much of the findings and decision of the surrogate as determines that the said Sarah and Jane Randall were interested in the estate of the decedent, or that they received anything by way of advancement upon their shares therein, and to the order of the surrogate allowing the said Sarah Randall and Jane Randall to intervene upon this accounting as parties interested in said estate.

The appellant's claim is that the said Sarah and Jane Randall ceased to be interested in such estate by reason of assignments made to him of all their shares and interests therein.

It appears that on the 19th day of August, 1890, Jane Randall executed an instrument, in writing, wherein it is recited that for a consideration of $3,900, to her in hand paid by said Caleb Randall,

she sold and assigned to the said Caleb Randall all her share, right, title and interest in and to the personal and real estate of her deceased brother, Harvey Randall, as heir at law, next of kin or otherwise, and authorized the said Caleb Randall to collect and receive the same and every part and parcel thereof.

On the 8th day of October, 1890, Sarah Randall executed a similar instrument, in writing, the consideration for which was named therein as being the sum of $4,400.

Both Sarah and Jane Randall, at the time of the death of their brother Harvey, were living in the State of Michigan, and had been living there for many years. Sarah was seventy-four years of age and Jane seventy-nine. Neither of them had been at their brother's for a great many years; neither of them knew the amount of property he was worth at the time of his decease.

Sarah testifies that the appellant told her the estate amounted to about $33,500, and Jane testifies that he told her that the estate was worth about $38,500; each testifies in substance that he stated that their shares amounted to not more than the amount specified in the bill of sale or assignment; that if it was found that their share amounted to more that he would pay the overplus.

The appellant disputes the stories of his sisters, Sarah and Jane, and claims that the assignments in question were absolute assignments to him of all their right, title and interest in the estate, and entitle him to have and receive all their shares in the estate, and that there was no agreement on his part to pay them any additional sum if, upon the settlement of the estate, their interests therein should prove to be greater than the amount he had paid them. There is a sharp conflict of testimony as to what the real nature of the transactions was between the appellant and his two sisters.

The surrogate has found, upon all the testimony, that the appellant knew the character, quality and value of the property, both real and personal, of which decedent died possessed. That neither Jane nor Sarah Randall had at any time before the hearing upon the accounting before him any knowledge of the value of the estate of which said decedent died possessed, except such as was acquired by them from the statements of the administrator made to them together and separately; that such statements were made to Sarah and Jane by the appellant for the purpose of obtaining undue,

unjust and wrongful advantage over them, and that he represented to them and to each of them that the value of both the real and personal estate was much less than it really was; and represented that it was of much less value than he well knew it to be, and that they and each of them relied upon such representations.

The appellant asks us to review such findings of fact, and also asserts that the surrogate had no power or authority to determine whether such assignments were fraudulently obtained or not; that they could only be set aside in a proceeding brought for that purpose in a court of equity.

I do not think it is necessary to enter into an investigation of these latter questions; assuming the appellant to be correct in the position that he has taken in relation to them, I do not see how, upon the facts as they appear in this case, and the law, as I understand it, applicable to such facts, he has been injured.

The purchase that he claims to have made, it seems to me, must be held to have been made for the benefit of the other beneficiaries of his trust; the relation that he held to the estate prevented his having any transactions in relation to it that would result in any pecuniary benefit to himself, coupled with detriment to any of the other heirs or next of kin of the decedent.

The transaction that he entered into with Sarah and Jane Randall was not simply one of release of their interest in the estate, as in *The Matter of Pruyn* (141 N. Y. 544), but was a purchase, or attempted purchase, of their interest in the estate, for the sole benefit and advantage of the appellant.

As a purchaser his purchase inures to the benefit of the estate, or, treated as a release from all claim against the estate for less than its value made for the other beneficiaries, the remaining heirs and next of kin would be entitled to the benefit of such transaction; but they have not appealed from the decision of the surrogate, and the appellant's appeal is not in their behalf, because they were awarded too little in the distribution of the estate; but it is in his own behalf, because the shares of Sarah and Jane Randall were not set apart to him as the assignee of their interests, and further, that there was awarded to them the difference between the amount of their interests and the sum that he paid to them upon the attempted purchase of such interest from them.

The appellant occupied to the estate of the decedent, and to his heirs and next of kin, the position of a trustee pure and simple.

"Absolute and most scrupulous good faith is the very essence of the trustee's obligation. The first and principal duty arising from this fiduciary relation is to act in all matters of the trust wholly for the benefit of the beneficiary. The trustee is not permitted to manage the affairs of the trust, or to deal with the trust property so as to gain any advantage, directly or indirectly for himself, beyond his lawful compensation." (Pom. Eq. Juris. § 1075.)

Treated either as a purchase of an interest in the estate, or as a claim against it, it seems to me that the transaction between the appellant and Sarah and Jane Randall cannot be upheld for the benefit of the appellant.

"If the trustee or executor compounds debts or mortgages, or buy in for less than is due, he shall not take the benefit of it to himself, for when he takes a trust he is to take it for the benefit of the *cestui que trust.*" (*Van Horne* v. *Fonda,* 5 Johns. Ch. 388 ; *Swinburne* v. *Swinburne,* 28 N. Y. 568.)

No party can be permitted to purchase an interest in property and hold it for his own benefit, when he has a duty to perform in relation to such property which is inconsistent with the character of a purchaser on his own account and for his own individual use. (*Van Epps* v. *Van Epps,* 9 Paige, 237 ; *Colburn* v. *Morton,* 1 Abb. Ct. App. Dec. 378.)

The reasons for prohibiting transactions between a trustee and his *cestui que trust* are fully set forth in the case of *Ten Eyck* v. *Craig* (62 N. Y. 406–419).

As administrator of the estate it is the duty of the appellant to husband it and care for it, so as to create as much of a fund as possible for division amongst the heirs and next of kin of the decedent; he is to deal with it for their benefit exclusively, not for his own ; he is to deal with them in relation to it for their benefit, not for his.

The rule is inflexible that the trustee shall not place himself in a position where his interest is or may be in conflict with his duty. (*Ten Eyck* v. *Craig,* 62 N. Y. 406–419.)

The appellant's interest as a purchaser in his own behalf was necessarily inconsistent with the duty he owed to the beneficiaries of the estate.

This case presents an object lesson of the propriety of the rule prohibiting transactions between a trustee and his *cestui que trust* and prohibiting trustees from purchasing property which they hold in trust. It has resulted in grave misunderstandings between the parties and false swearing as to what the real transaction was, and of serious scandal upon the administration of trust estates, and if the appellant's position be upheld it will result in the loss of a large portion of their shares in the estate to which two of the heirs and next of kin were entitled.

The appellant, from the nature of his relation to the estate, knew its resources and its value better than any one else. The parties with whom he was dealing lived and had lived for many years at a distance from where the estate had been accumulated; they were advanced in years and could not deal with the appellant on equal terms.

There are cases where confidential relations have existed between the parties, or where one party to the transaction has occupied a position of trust in relation to the other, or where there has been opportunity for the exercise of undue influence, where the courts have held that such relation cast the burden of proof upon the purchaser of establishing the good faith of the transaction, and that it had not resulted to the detriment of the other party. But this case is not simply a case where confidential relations existed between the parties, or where there was an opportunity for the exercise of undue influence, but in addition is one of dealing between a trustee and his *cestui que trust*, pure and simple, and where also it appears that such dealing, if upheld, will result in large pecuniary gain to the trustee, personally, and a corresponding loss to the *cestui que trust*.

The fact that the trustee will largely profit and that the *cestui que trust* will lose, is not necessarily a controlling element; in a large number of instances it must necessarily be impossible for the court to discover what advantages have been derived by the trustee, and what injury has been sustained by the *cestui que trust*, and the only safety lies in maintaining, as a general rule, the invalidity of purchases of claims against, interests in, or legacies payable out of, estates, by the trustee of such estates, when purchased for their own benefit; and where such purchases have been made, and have resulted profitably to the trustee, to hold that they are made for the

benefit of the estate, and, if loss has resulted, to charge such to the trustee personally.

It results from this that whether we treat the transaction of the appellant with Sarah and Jane Randall as invalid and of no effect, or as transactions that inure to the benefit of the remaining heirs and next of kin to the decedent, the appellant has not been injured by the decree of the surrogate, and has no cause of appeal therefrom.

The decree should, therefore, be affirmed, with costs and disbursements, to be paid by the appellant personally.

MAYHAM, P. J., and PUTNAM, J., concurred.

Decree affirmed, with costs and disbursements of the appeal, to be paid by the appellant personally.