## DE MARTIN *v.* PHELAN.

*(Circuit Court, N. D. California. September 14, 1891.)*

**MORTGAGES—REDEMPTION—INADEQUACY OF CONSIDERATION.**

Complainant, in her bill praying that she be allowed to redeem certain property, alleged that on a named date she was the owner of such property, subject to mortgage liens for some $185,000; that thereupon defendant had purchased these liens "as a means of securing title to said property, and for no other purpose," and had foreclosed them; that at this time complainant was in indigent circumstances, without available means of support for her family, and defendant, knowing her destitute

state, took advantage of his position, and by means of this mortgage indebtedness induced complainant to sell him her equity of redemption for the sum of $19,000, it being worth at least $45,000, as defendant then knew. *Held* that, in the absence of allegations of fraud, undue influence, or confidential relations, the bill is without equity.

In Equity. Bill to redeem land from mortgage.
*Geo. D. Collins*, for plaintiff.
*Wm. F. Herrin*, for defendant.

HAWLEY, J., (*orally.*) The defendant demurs to complainant's bill in equity, praying for a decree allowing her to redeem certain property, and for an accounting of the rents, issues, and profits therefrom since November 4, 1881. The bill alleges that on November 4, 1881, complainant was the owner in fee of certain lands, specifically described in the bill, situated in Santa Clara county; that at said date, and for some time prior thereto, said property was subject to mortgage liens, two of which were held by the Bank of San José and the other by David Belden, aggregating the sum of $185,000; that the liens held by the Bank of San José were foreclosed on the 13th of August, 1881, by judgment and decree of the superior court in Santa Clara county; that prior to said decree "all of said mortgage liens were assigned and transferred to said defendant; that said defendant purchased said mortgage indebtedness as a means of securing the title to said property, and for no other purpose;" that at the time of said purchase complainant "had no available means of support for herself and family, and was in indigent circumstances and in great need, and such continued to be her condition up to and including the 4th day of November, 1881, all of which said defendant well knew; * * * that said defendant thereupon took advantage of the destitute condition of your oratrix, and by means of the said mortgage indebtedness purchased by him as aforesaid induced your oratrix to transfer the said property to him in consideration of the sum of nineteen thousand dollars;" that thereupon, on the 4th day of November, 1881, "your oratrix did make, execute, and deliver to said defendant a deed of conveyance of said property in consideration of the said sum of nineteen thousand dollars, and because of the helpless and destitute condition aforesaid, of which said defendant took advantage in securing said deed; that at the time of the purchase of said mortgage indebtedness, * * * and thence until the said 4th of November, 1881, the interest of your oratrix in said property, to-wit, the equity of redemption, was of the value of forty-five thousand five hundred dollars and more, which the said defendant during all said times knew, and in taking the interest of your oratrix in said property, and paying therefor the sum of nineteen thousand dollars, the said defendant took advantage of his position as holder of said mortgage indebtedness, and of the helpless and poverty-stricken condition of your oratrix." Under these averments, what were the inducements held out by the defendant, which caused her to sell her equity of redemption? Did he make any false representations as to the value of the property? How did defendant take advantage of complainant's

destitute condition?    There is no allegation in the bill of any fraud on the part of defendant.    There is no averment that any relations of confidence or trust existed between the parties, no claim that the deed of the equity of redemption' was intended as a mortgage, no pretense that any fraudulent representations of any kind were made; no steps were taken by defendant to prevent other parties from buying complainant's interest in the property.    There are no averments that defendant, either in purchasing the mortgage liens or procuring the deed, took any unfair or grossly oppressive advantage of complainant's necessities, or in any manner exercised any undue·or improper influence over the complainant.    He seems simply to have made an offer for her interest which, on account of her necessities, and the embarrassed condition of the property, she accepted.    The bill avers that defendant's object in purchasing the mortgage liens was to secure the title to the property, and that by said purchase, and the knowledge that complainant was without means, and in a helpless and destitute condition, he gave her only $19,000 for her equity of redemption at a time when he knew that her interest in the property was worth at least $45,000.

Complainant seeks to maintain this action upon the theory that a mortgagee holds a financial advantage over the mortgagor which, of itself, has a tendency to prevent him from dealing with the mortgagee on an equal footing, and that such a relation places the mortgagor under the power of the mortgagee and destroys free agency.    In support of this theory counsel for complainant contends that in cases of this character the principles of law are almost as stern and inflexible as those which govern transactions between a *cestui que trust* and his trustee, and that the sale of the property, under such circumstances as are alleged in the bill, will never be sustained, unless *bona fide*, and for a full, fair, and adequate consideration.    Can this contention be sustained?    What is the relation of mortgagor and mortgagee?    Under the law of California, and most of the other states, the mortgagee takes no estate in the land, but has only a lien thereon as security for the debt until foreclosure.    He can at any time make a *bona fide* purchase of the equity of redemption or interest of the mortgagor, and thereby acquire an absolute title to the mortgaged premises.    There is no trust relation between the mortgagor and the mortgagee when unaccompanied by possession.    The mortgagee does not owe the mortgagor any duty to protect the equity of redemption.    There is no relation analogous to that of trustee and *cestui que trust* between the mortgagor and mortgagee created by the execution of the mortgage.    No fiduciary character exists between them which prevents the mortgagor from buying the property at foreclosure sale, and holding the title thus acquired adversely to the mortgagor. . The mortgagee can at all times deal with the mortgagor in respect to the property mortgaged precisely upon the same footing as any other person, and may purchase liens or claims against the property for less than their face value, and hold them against the mortgagor for the full amount.    Under these general principles, which are well settled and supported by numerous authorities, —*Green* v. *Butler*, 26 Cal. 601 ; *Ten Eyck* v. *Craig*, 62 N. Y. 421 ; *Walker*

*v. Bank,* (Del. Err. & App.) 14 Atl. Rep. 823; 6 Lawson, Rights, Rem. & Pr. § 3031,—how can it consistently be claimed that the averments of the bill in this case are sufficient to maintain this action? Parties who are in poor and destitute circumstances, if they have any property, and wish to dispose of it, are often compelled by their necessities to sell their property for less than its real value; but if they obtain all that they ask for it, or voluntarily accept what is offered, and there is no fraud, deceit, oppression, improper or undue influence, or confidential relations existing between them, courts of equity have no jurisdiction, power, or authority to set aside such transactions. There is in most cases a contest between the purchaser and the seller of real property; the purchaser usually endeavoring to buy the property at the lowest price the owner is willing to take, and the owner trying to get the highest price the purchaser is willing to pay. In a certain sense the purchaser, with ready money at his command, takes advantage of the circumstances of the owner who is poor, and by reason of his poverty is willing to sell for whatever is offered. When the parties are dealing at arms-length in the open market, and no unfair or improper measures are used or misrepresentations made, it would be absurd to say that a court of equity, years afterwards, when the party selling had met with financial success, and acquired sufficient means to repay the purchase money, could be called upon to annul the sale. It is only in cases where the *bona fides* of the transaction is called in question, and when fraud or other like causes above enumerated is alleged, that courts of equity are authorized to interfere. In such cases the relation of mortgagor and mortgagee is "always a circumstance which creates suspicion, and aids in the proof of an allegation of oppression and undue advantage, where there is a gross inadequacy of price, and other circumstances tending to show fraud." *Chapman v. Mull,* 7 Ired. Eq. 294. The authorities cited and relied upon by complainant are cases of this character. Thus, in *Peugh v. Davis,* where the action was to set aside a release of the equity of redemption, it being alleged and claimed that the money paid for the release was in fact a further loan of money, and that the release was given only as security for such loan, and the question to be determined was as to the true character of the transaction, the court very properly said that the transaction will "be closely scrutinized, so as to prevent any oppression of the debtor; * * * that a release to the mortgagee will not be inferred from equivocal circumstances and loose expressions. * * * The release must also be for an adequate consideration; that is to say, it must be for a consideration which would be deemed reasonable if the transaction were between other parties, dealing in similar property in its vicinity. Any marked undervaluation of the property in the price paid will vitiate the proceeding." 96 U. S. 337. The same rule was applied in *Villa v. Rodriguez,* 12 Wall. 323, to enable the court to determine whether a deed absolute upon its face was a mortgage. In *Russell v. Southard,* 12 How. 154, the same doctrine is announced and applied to a mortgagee in possession of the property, where the question of the purchase of the equity of redemption was in dispute. The court, in the course of the

opinion, indicating the necessity of confining the rule to the proper class of cases, said :

"But strong expressions, used with reference to the particular facts under consideration, however often repeated by subsequent writers, cannot safely be taken as fixing an abstract rule. We think that, inasmuch as the mortgagee in possession may exercise an undue influence over the mortgagor, especially if the latter be in needy circumstances, the purchase by the former of the equity of redemption is to be carefully scrutinized when fraud is charged; and that only constructive fraud, or an unconscientious advantage which ought not to be retained, need be shown, to avoid such a purchase. But we are unwilling to lay down a rule which would be likely to prevent any prudent mortgagee in possession, however fair his intentions may be, from purchasing the property, by making the validity of the purchase depend on his ability afterwards to show that he paid for the property all that any one would be willing to give. We do not deem it for the benefit of mortgagors that such a rule should exist."

The general principles announced in these and other cases cited by complainant, when applied to a similar state of facts, should always be followed; but they have no application to the particular facts of this case, and cannot be considered as authorities in support of the theory upon which complainant relies to sustain this action. To determine the character of the transaction it would be unfair to confine the consideration solely to the alleged valuation of complainant's interest and the amount paid by defendant therefor. To be just to both parties, the entire transaction should be inquired into. Is it reasonable to believe that any other person, with knowledge of the amount of the mortgage liens, in the light of the foreclosure proceedings, the accumulated costs and interest on the money, and the limited time allowed for redemption, would have paid more than $19,000 for complainant's interest in the property? The fact that $204,000 was paid for property alleged to be worth $230,500, under such circumstances, certainly does not show such a marked undervaluation or inadequacy of price as would, of itself, shock the conscience, or raise any presumption of fraud or undue advantage that would justify a court of equity to annul the sale. The demurrer is sustained.