MARTIN v. NEW ROCHELLE WATER CO. et al.

(Supreme Court, Appellate Division, Second Department.    December 30, 1896.)

1. DEEDS—DURESS—THREAT TO FORECLOSE MORTGAGE.

Duress in the execution of a deed is not established by evidence that the grantee bought a mortgage on the grantor's land, and threatened to foreclose it unless the grantee sold him a part of the land at a certain price.

2. MORTGAGES—RELINQUISHING EQUITY OF REDEMPTION—INADEQUATE CONSIDERATION.

A deed of mortgaged land, executed by the mortgagor to the mortgagee after default in satisfaction of the mortgage debt, will not be set aside, in the absence of fraud, merely because the land was worth more than the amount paid, where the consideration was not grossly inadequate.

3. DEEDS—DURESS—LACHES.

One who has, for four years, enjoyed the proceeds of a sale of lands, cannot avoid the deed for duress, where there was no gross inadequacy of consideration.

Appeal from special term, Westchester county.

Action by Rachel A. Martin against the New Rochelle Water Company and Adrian Iselin to have a deed given by plaintiff declared a mortgage, for leave to redeem therefrom, and for an accounting for the use and occupation of the premises conveyed from the date of such deed.    There was a judgment for plaintiff, and defendants appeal.    Reversed.

Argued before BROWN, P. J., and CULLEN, BARTLETT, HATCH, and BRADLEY, JJ.

Frederick W. Whitridge, for appellants.
John H. Clapp, for respondent.

CULLEN, J.    In December, 1891, the plaintiff was the owner of a farm of some 32 acres, which she had purchased in the year previous for the sum of $6,500.    The plaintiff paid for the farm by the execution of a mortgage for the whole amount of the purchase money, secured by a collateral mortgage on other property owned by her.    The defendant Iselin was the principal stockholder of the defendant the New Rochelle Water Company.    That defendant desired to obtain from the plaintiff part of the farm, for its waterworks.    The complaint charges that Iselin negotiated with the plaintiff for such purchase, and that plaintiff refused to accede to the terms offered; that thereupon Iselin purchased the $6,500 mortgage, and then renewed negotiations with the plaintiff, and threatened a foreclosure unless plaintiff acceded to his terms; that, under the fear of such foreclosure and a loss of the whole property, plaintiff executed an agreement to sell 20 acres to the water company for $200 an acre, and subsequently, in pursuance of such agreement, executed a deed to that defendant.    The purchase price was credited on the mortgage, and the remainder due thereon was subsequently paid off by the plain-

tiff. It was also charged that the lands so conveyed were worth $18,000. The complaint prayed that the deed to the defendant corporation be declared a mortgage, and that she be allowed to redeem. The trial court found the facts as charged in the complaint, except that it made no finding as to the value of the land conveyed, other than that it was worth more than the price paid, and gave judgment for the plaintiff substantially as prayed for.

The deed to the water company cannot be adjudged void, as secured by duress, in the ordinary sense of that term, because the defendant Iselin threatened nothing more than the enforcement of his legal rights. Knapp v. Hyde, 60 Barb. 80. The fact that a plaintiff purchased a mortgage from malice towards the defendant, and solely with the view to sue upon it, constitutes no defense to an action for its foreclosure. Morris v. Tuthill, 72 N. Y. 575. If the deed can be avoided, it can only be upon the ground of the relation between the parties, and on the theory that the conveyance was substantially made to the mortgagee. Undoubtedly the rule has been often stated that a purchase by the mortgagee of the mortgagor's equity of redemption will be closely scrutinized, and sustained only when fair and for an adequate consideration. Jones, Mortg. § 711; Peugh v. Davis, 96 U. S. 332; Russell v. Southard, 12 How. 139. But this rule has generally been declared in jurisdictions where the rights of the mortgagor and mortgagee are different from those which, since the Revised Statutes, obtained in this state; and I doubt whether the rule is applicable here, at least in its full force. At common law the legal estate vested in the mortgagee, by virtue of the mortgage. He was entitled to possession of the mortgaged premises. On default, no title remained in the mortgagor cognizable in a court of law. The latter's interests were recognized in courts of equity alone. The mortgagor was largely in the power of the mortgagee, and at his mercy, except as courts of equity protected his rights. But in this state, where the mortgage is a mere lien, and the mortgagor entitled to possession till foreclosure, no such relation exists between the parties, and the mortgagee has no more power over the mortgagor than any other creditor with a lien. In Trimm v. Marsh, 54 N. Y. 599, it was held that even a mortgagee in possession could acquire the equity of redemption, when sold on an execution against the mortgagor. In Ten Eyck v. Craig, 62 N. Y. 406, it was held that a mortgagee in possession stood in no relation of trust or confidence to the mortgagor, such as prohibited him from purchasing for his own benefit the title of the latter, when sold on an execution. It was there said by Judge Andrews:

"There is, in truth, no relation analogous to that of trustee and cestui que trust, between the mortgagor and mortgagee, created by the execution of the mortgage. The mortgagee is not a trustee of the legal title, because, under our law, he has no title whatever. He may deal with the mortgagor, in respect to the mortgaged estate, upon the same footing as any other person. He may buy in incumbrances for less than their face, and hold them against the mortgagor for the full amount. He may do what any other person may do, and his acts are not subject to impeachment simply because he is mortgagee."

I am aware that in Odell v. Montross, 68 N. Y. 499, Judge Allen speaks of the rule as still prevailing in this state, but the decision

did not proceed on any such ground. In De Martin v. Phelan, 47 Fed. 761, is to be found an instructive discussion of the application of the rule where the law has changed the rights and estates of mortgagees and mortgagors. It was there said of a purchase by the mortgagee from the mortgagor:

"When the parties are dealing at arm's length in the open market, and no unfair or improper measures are used, or misrepresentations made, it would be absurd to say that a court of equity, years afterwards, when the party selling had met with financial success, and acquired sufficient means to repay the purchase money, could be called upon to annul the sale. It is only in cases where the bona fides of the transaction is called in question, and when fraud, or other like causes, above enumerated, is alleged, that courts of equity are authorized to interfere. In such cases the relation of mortgagor and mortgagee is 'always a circumstance which creates suspicion, and aids in the proof of an allegation of oppression and undue advantage, where there is a gross inadequacy of price, and other circumstances tending to show fraud.' "

Here there was no fraud, nor has the court found any marked undervaluation of the property. It has simply found that the property was worth more than the amount paid for it. That which courts of equity sought to restrain by the rule invoked was the forfeiture by the mortgagor of his equity of redemption by reason of default in payment of his debt, obtained under cover of a release of the equity of redemption, or a conditional sale. The sale to the water company, in this case, even if induced by the fear of foreclosure, presents no such aspect.

But, apart from the question whether the conveyance to the water company was justly subject to avoidance, we think the plaintiff, by her laches, has lost any right to avoid it. When she made the sale she was in default for nearly two years' interest on the mortgage, and in the payment of two years' taxes on the property. These arrears were cleared up by the proceeds of the sale, and the mortgage stood as reduced until the payment of the remainder due upon it. For four years the plaintiff took advantage of the sale, and made no complaint of it. As already said, there is no finding of how great the true value of the property was. The evidence presents the usual diversity of opinion experienced when the value of country real estate is sought to be ascertained. There is much evidence tending to show that the plaintiff obtained the value of the property. If the plaintiff wished to disaffirm this sale, she should have proceeded, after a reasonable time, to take action, and not wait for years to speculate upon a possible enhancement in value. The case differs entirely from that where a party has been forced or tricked to give up his equity of redemption for a nominal consideration. By the failure of the plaintiff to disaffirm her deed for this period of years, we think she has ratified it.

The judgment appealed from should be reversed, and a new trial granted; costs to abide the event. All concur.